### CAMP *against* BATES.

An agreement to pay interest on interest which has become due, is not usurious.

The performance of such an agreement is required by natural justice and equity; and its breach is a violation of moral duty.

Therefore, where *A* gave a promissory note to *B*, dated the 1st of *January*,

*Maiddlesex,*
*July, 1836.*

Camp
*v.*
Bates.

1829, payable in two years, with annual interest; no payment, or demand of payment, having been made until the 14th of *February,* 1832, *A* and *B* then came together, and *B* proposed, that the interest on the note should be computed, together with the interest on that interest, up to the 1st of *January,* 1832, and such compound interest being added to the principal, a new note should be given for the amount, payable in two years, with interest annually, from the first of *January,* 1832; and that on *A's* compliance with this proposition, *B* would extend the time of payment of the debt until the 1st of *January,* 1834; the pecuniary circumstances of *A* were such, at this time, that he could not pay the debt, without a great sacrifice of property; to prevent which, and also to avoid being arrested for the debt, he acceded to such proposition, and gave his note accordingly; in an action on such note, it was held, that it was not usurious.

There is a settled distinction between usurious contracts, which are void both in law and equity, and oppressive contracts, which a court of equity will refuse to enforce or will set aside.

THIS was an action against the defendant, as indorser of a promissory note, made by *James C. Bates,* payable to the defendant, or order, and by him indorsed to the plaintiff. It was for 3236 dollars, dated *February* 14th, 1832, payable on the 1st of *January,* 1834, with interest to be paid annually from the 1st of *January,* 1832. The declaration alleged a demand on the maker, when the note became due, and notice of non-payment to the defendant.

The cause was tried at *Haddam, August* term, 1836, before *Huntington,* J.

On the trial, the defendant set up two grounds of defence. He claimed, that no demand was made of the maker of payment of the note, when it came to maturity; and that the note was given on an usurious consideration, and was, therefore, void. In support of the defence, the deposition of *James C. Bates* was read. It is annexed to the motion, and contains, among other matters, the following statement: "Neither *Dennis Camp,* nor any one else, in his name, has ever called on me for the payment of the note given in 1832; nor has he, to my knowledge, ever left any notice, at any of my places of residence, that payment of the note must be made. In short, *Camp* has not, nor any one in his name, said a word to me on the subject of the note since I gave it." The plaintiff read in evidence a writing, signed by the defendant, dated "*Durham, January* 4th, 1834," in which he acknowledges, that the plaintiff made due demand of *James C. Bates* of payment of the note, and gave to the defendant legal notice as an

indorser, and that he (the defendant) was bound for the payment of the note as indorser.

The plaintiff and defendant, who are brothers by marriage, both resided at *Durham* in this state, at and long previous to the time when the note in suit fell due; and *James C. Bates*, at the same time, resided in the city of *New-York*. The defendant denied, that any demand was ever made of the maker of the note, and insisted that the court ought to charge the jury, that if they should find from the evidence that no demand was in fact made, as alleged in the declaration, then such allegation was not proved, and their verdict must be for the defendant. The plaintiff claimed, that the writing signed by the defendant, amounted to a waiver, on his part, of the laches of the plaintiff in not making a demand, and was admissible and sufficient evidence in support of the averment in the declaration that such demand was made.

The judge instructed the jury, that it was necessary for the plaintiff to prove to their satisfaction, that a legal demand was made of the maker of payment of the note, when it became payable, and that legal notice was given to the defendant of the default of the maker to make payment, or a waiver of such demand and notice. If they should find, that the defendant subscribed the writing with a full knowledge that no demand of payment had been made and that no notice of nonpayment had been given, it amounted to a waiver of the consequences of such neglect to make demand and give notice, and was admissible under the averment in the declaration that a demand was made and notice given.

The defendant also claimed, that the note in suit was given on an usurious consideration, and was, therefore, void. In support of his defence on this ground, he exhibited in evidence the deposition of said *James C. Bates*, containing the following statement: " I gave to *Dennis Camp* a promissory note, dated *January* 1st, 1829, and made it payable two years from its date, with lawful interest. When this note became due, said *Camp* did not call on me for the payment of it; and it remained without my ever being called upon to pay it, and without any thing being paid on it, until the 14th of *February*, 1832; at which time said *Camp* had an interview with me respecting this note. He then produced the note, computed the interest on it, together with the interest on that interest, and

added this compound interest to the principal; and then pro-posed, that if I would allow this compound interest to be added to the principal, and would agree that the new note, which he proposed to take, should be drawn with the interest to com-mence back to the 1st of *January,* 1832, and would get my father *Gurnsey Bates's* name upon it as an indorser; he would extend the payment of it until the 1st of *January,* 1834, and accept of it in lieu of the note he then held against me. My pecuniary circumstances were such, at the time this propo-sition was made, that it was impossible for me to pay the note, without a great sacrifice of property: so, in order to prevent this sacrifice, and also to prevent being arrested, by a suit on this note, which might, at any time, be commenced against me, I consented to *Camp's* proposal, and agreed to give, and did give, my note, on the 14th of *February,* 1832, and made it payable on the 1st of *January,* 1834, for the sum of 3236 dollars, with interest to be computed and paid annually from the 1st of *January,* 1832. At the time I made and delivered this note to *Camp,* it was not indorsed. The old note, there-fore, was to remain in *Camp's* hands until I could have the indorsement made on the new note; which, I think, was done soon afterwards."

No evidence was introduced, by the plaintiff, tending to rebut or discredit this testimony; nor was it claimed, by the plaintiff, that any mistake or error in computation had occurred, by which the note was given for a larger sum than was intended by the parties.

The judge charged the jury, that if there was included in the note in suit the interest which accrued on the note of *Jan-uary* 1st, 1829, and interest upon that interest, in the manner and under the agreement stated in the deposition of *James C. Bates,* the note would not, on that account, be usurious, unless such agreement was made and such interest upon interest included in the note in suit, as a cover and with intent to obtain more than lawful interest, and thus to evade the statute of usury: if such agreement was made and such interest upon interest included in the note, as a mere cover or pretext to secure the payment of more than lawful interest, and with the intent thus to evade the statute of usury, the note would be usurious.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial for a misdirection.

*W. W. Ellsworth* and *R. S. Baldwin*, in support of the motion, contended, 1. That the averment of demand and notice was not proved, by evidence of a waiver. If the plaintiff relies upon some sufficient excuse for want of demand and notice, he must *allege* it. *Swift on Ev. & Bills*, 330.

2. That the judge should have charged the jury, that upon the facts proved and not disputed, the note in suit was usurious. This note, in consideration of the forbearance of the principal sum due, includes over and above six *per cent. per annum* secured to be paid annually, a further sum of 30 dollars, which the testimony proved to have been added on no other consideration whatever than to procure the forbearance of the principal sum. In the first place, this extra sum was *not due*, legally or equitably. No court either of law or equity, would have allowed the plaintiff to collect it. Secondly, it was an *unconscientious* demand of a sum of money to be added, in consideration of *forbearance*, which, if it had been included in the new note, without any agreement to forbear, a court of equity would have expunged. *Van Benschooten* v. *Lawson*, 6 *Johns. Ch. Rep.* 313. 316. Thirdly, it was not allowed by *James C. Bates* because it was due, legally or morally, but merely because it was required to obtain forbearance of the 3206 dollars then due, and which his pecuniary circumstances compelled him to accede to. Being a mere gratuity, required and allowed as the consideration of forbearance, the transaction was *per se* usurious. And whether the parties had in contemplation the statute of usury, and included this sum as a cover, with a special intent to evade it, makes no difference. It is enough that it was required and given for forbearance. In *Sackett* v. *Bassett* & al. 4 *Madd. Ch. Rep.* 38., the master reported a second mortgage usurious, the bond containing a sum made up in part of interest upon interest then in arrear. In *Caliot* v. *Walker*, 2 *Anst.* 495. it was held, that where it was the usage of the plaintiffs (bankers) to strike a balance of their accounts at the end of each quarter, and send the balance, when struck, to the defendant, the practice of the parties brought it to the case of a fresh agreement, at the beginning

of each quarter, to lend the sum then due, and consequently, was not usurious.

If the facts in this case render the transaction a contract for the taking of more than 6 *per cent. for forbearance*, it is usurious, whatever may have been the views of the parties as to the legality of the transaction. *The Maine Bank* v. *Butts*, 9 *Mass. Rep.* 49. *Marsh* v. *Martindale*, 1 *Bos. & Pul.* 154. 159.

*Hungerford* and *Wightman*, contra, contended, 1. That if the writing signed by the defendant is not conclusive evidence of a demand of the maker and notice to the indorser, it is, nevertheless, a waiver by the defendant of the want of such demand and notice, and may be given in evidence under this declaration alleging such demand and notice. *Saunderson* v. *Judge*, 2 *H. Bla.* 510. *Eden* v. *Stewart*, 2 *Caines* 127. *Ogden* & al. v. *Cowley*, 2 *Johns. Rep.* 274. *Williams* v. *Mathews*, 3 *Cowen* 252. *Norton* v. *Lewis*, 2 *Conn. Rep.* 478. *Patience* v. *Townley*, 2 *Smith's Rep.* 223.

2. That the note declared on falls neither within the letter nor the spirit of the statute against usury, and is not usurious. In the first place, it is not within the letter of the statute. By turning interest which has accrued into principal, there is not more reserved or taken than at the rate of 6 dollars for the forbearance of 100 dollars for a year. Secondly, no case is to be found where a court of law or equity has held the taking or reserving of compound interest to be usury. Courts of chancery consider compound interest in general oppressive; and therefore, except in particular cases, will disallow it; but they never consider it as embraced by the statute, or coming within the definition of usury. And though a court of chancery may order it *expunged;* yet a court of law has no such power. If there is no usury in the note, the plaintiff is entitled to judgment for the amount of it. The following authorities were cited and commented on. *Le Grange* v. *Hamilton*, 4 *Term Rep.* 613. *Chambers* v. *Goldwin*, 9 *Ves.* 254. *Childers* v. *Dean* & al. 4 *Rand.* 408. 411. *Kennon* v. *Dickins, Cam. & Nor.* 361. *Fobes* & al. v. *Cantfield, Ohio Cond. Rep.* 455. S. C. 3 *Hammond's Rep.* 17. *Watkinson* v. *Root, Ohio Cond. Rep.* 801. S. C. 4 *Hammond's Rep.* 373. *Connecticut* v. *Jackson*, 1 *Johns. Ch. Rep.* 13. *Barrow* & al.

v. *Rhinelander*, 1 *Johns. Ch. Rep.* 550. *Schieffelin* v. *Stewart* & al. 1 *Johns. Ch. Rep.* 620. *Greenleaf* v. *Kellogg*, 2 *Mass. Rep.* 568.

HUNTINGTON, J. No exception is taken to that part of the instruction, which states the legal requisites of a valid waiver, or from which it may be inferred ; but it is insisted, that as the declaration avers a demand and notice in fact, the plaintiff is bound to strict proof of these averments, and cannot give in evidence any facts, which constitute, or tend to show, a waiver of them. This presents one of the grounds upon which the motion for a new trial is founded.

If the point now made, could be considered as open to discussion, we should feel no difficulty in giving our sanction to the disposition which was made of it, by the judge at the circuit. It is, certainly, a very common practice to frame declarations averring demand and notice, when reliance is placed upon proof of matter of excuse. The most distinguished special pleaders have adopted this form, in such cases ; and the practice, which has long prevailed, of admitting evidence of waiver, under such declarations, proves that no variance between the allegations and the proof, has been supposed to exist. This mode of pleading, is not attended with any practical inconvenience ; and is not objectionable as tending to surprise and mislead the defendant. The latitude of proof which is allowed the plaintiff, under declarations so drawn, is not opposed to any technical rule of pleading, but is founded on a very obvious principle. It is this: the proof offered of a waiver, is not strictly matter in excuse, but of facts "which, in their legal effect and by the custom of merchants, are equivalent to a demand and notice." Nor does it change the contract of the indorser, (which is, that he will pay the note, provided the holder will make due demand and give due and reasonable notice,) and create a liability at all events, whether such demand be made and notice given or not ; but it merely shows, that the defendant has waived the performance of a condition made or implied for his benefit. It does not assume, that the contract itself does not require demand and notice ; but that the defendant has agreed to dispense with them. We forbear, however, any further discussion of this question, on principle. Even were it doubtful in this respect, which we do not admit,

*Middlesex,*
*July, 1836.*

Camp
*v.*
Bates.

it has, long since, been settled by authority; by the adjudications of courts of the highest respectability in *Great-Britain* and elsewhere, which we neither desire, nor feel at liberty to overrule. We content ourselves with referring to a few of the cases. *Borradaile* v. *Lowe,* 4 *Taunt.* 93. *Hopes* v. *Alden,* 6 *East,* 16. n. *Lundie* v. *Robertson,* 7 *East* 231. *Firth* v. *Thrush,* 8 *B. & C.* 387. *Hill* & al. v. *Heap* & al. 1 *Dowl. & Ryl. N. P. Ca.* 57. *Paterson* v. *Beecher,* 6 *I. B. Mo.* 319. *Leffingwell* & al. v. *White,* 1 *Johns. Ca.* 99. *Thornton* v. *Wynn,* 12 *Wheat.* 183. *Taunton Bank* v. *Richardson* & al. 5 *Pick.* 436. *North Bank* v. *Abbott,* 13 *Id.* 465. *Norton* v. *Lewis,* 2 *Conn. Rep.* 478. *Breed* v. *Hillhouse,* 7 *Id.* 523.

The second exception which is taken to the proceedings in the court below, is founded on the instruction to the jury, that the note, although executed under the circumstances, in the manner, and for the consideration stated in the deposition of *James C Bates,* was not, on that account, usurious and void. The defendant claims, that the instruction should have been the reverse of that which was given, and insists, that upon the facts stated in that deposition, (there being no pretence that any mistake or error in computation had occurred, by which the note was given for a larger sum than was intended by the parties,) the note was within the letter and spirit of the statute, which makes void all contracts for the payment of any money lent upon or for usury, whereupon there is reserved above the rate of six dollars for the forbearance of one hundred dollars for a year, and so after that rate, for a greater or less sum, or for a longer or shorter time. That part of the deposition of *J. C. Bates,* which is material to the present inquiry, is, substantially, as follows: That he had given to the plaintiff a note, dated *January* 1, 1829, payable in two years, with annual interest. No demand of payment of this note, was made of him, until the 14th day of *February,* 1832; when he and the plaintiff had an interview respecting it, at which time, the defendant proposed that the interest on the note should be computed, together with the interest on that interest, adding the compound interest to the principal, up to *January* 1, 1832; that a new note should be given for the amount thus ascertained, to be dated *February* 14, 1832, payable to the defendant, or order, on the 1st of *January,* 1834, with interest annually from *January* 1, 1832, to be indorsed by the defendant; that on his

*Middlesex,*
July, 1836.

Camp
*v.*
Bates.

compliance with this proposition, the plaintiff would extend the time of payment of the debt until *January* 1, 1834; that the pecuniary circumstances of the defendant were such, at the time of the interview between himself and the plaintiff, that he could not pay the debt, without great sacrifice of property, to prevent which, and also to prevent being arrested by a suit for the debt, he consented to the plaintiff's proposal; and the note in suit was drawn, indorsed and delivered, to carry into effect this arrangement. Such were the circumstances, the manner and the consideration connected with the note in question. Is it usurious? The judge who tried the cause, expressed the opinion that it was not usurious. The motion for a new trial presents for our decision, the question whether that opinion is correct.

Before we proceed to examine it, we remark, that the qualification with which the opinion of the court was accompanied, *viz.*, that such a reservation of compound interest might be usurious, if it was *in fact* made by the agreement of the parties, as a mere cover or pretext to secure the payment of more than lawful interest, and with the intent thus to evade the statute of usury, was doubtless intended to meet any supposable claim that usurious interest agreed to be received and given, might be covered up under the guise of compound interest. It was supposed the case might bear some analogy to those cases where the legality of the practice of banks to receive interest for a portion of a year, computed on the principle that a year consists of 360 days, or 12 months of 30 days, each, had been called in question; in which cases, although the sum received upon such computation, somewhat exceeds six *per cent.* for one year, the transaction was held not to be usurious, unless it was done with design and with the intent to take more than lawful interest, which was left, as a matter of fact, to the jury. Such had been the decisions in this state, by the superior court; and such was the rule in *Massachusetts. Agricultural Bank* v. *Bissell*, 12 *Pick.* 586. We do not consider it necessary to decide, whether, in the case before us, the instruction to the jury required the qualification which was given. We are inclined to think the judge would have been entirely justified in charging the jury, that the note in suit was not an usurious note, without leaving to them any matter of fact connected with a supposed intention or design of the par-

ties to cover up an usurious transaction. But whether this qualification was, or was not, a necessary part of the instruction, the defendant, who moves for a new trial, cannot complain of it. The whole subject was committed to the jury, in a form and under a charge, as favourable for him, certainly, as was consistent with any known principle of law.

The argument by which the defendant endeavours to support his claim, was very ingeniously put by his counsel, in the following concise and comprehensive form. There was included in the note in suit, by the agreement of the parties, a sum, which *J. C. Bates* was under no legal, equitable or moral obligation to pay. It was so included to obtain further forbearance and delay of payment. The compound interest, which formed a part of the principal of this note, could not have been collected, at law or in equity ; nor was *J. C. Bates* morally bound to pay it. He was required, however, by the defendant, to include it in the note, as the condition upon which the time of payment would be extended. For that purpose only, was it exacted ; and to obtain that forbearance alone, was it secured to be paid. As a necessary result, there was corruptly and usuriously reserved in the note, above the rate of six dollars for the forbearance of one hundred dollars for one year. We have paid all the attention to this ingenious and imposing argument, which it deserves ; but we are not convinced, that all the premises necessary to support the conclusion drawn from them, and which are assumed, are just ; or that the conclusion itself is a legitimate inference from these premises, even were they admitted. It is not denied, that in general, interest upon interest is not allowed. It cannot be collected, by the aid of a court of law or chancery ; and in this sense, it is true, the borrower is under no legal or equitable obligation to pay it. Courts of justice have refused their assistance to the lender, to enable him to enforce the collection of compound interest. A rule of *policy*, established by themselves, prohibits their interference. They have furnished improvident and necessitous borrowers of money, with a shield to protect them against the supposed ruinous consequences of their own contracts. The reason of this rule has been thus explained, by a distinguished jurist of our own country : " Interest upon interest, promptly and incessantly accruing, would, as a general rule, become harsh and oppressive. Debt would accumulate, with a rapacity, beyond

*Middlesex*,
July, 1836.

Camp
*v.*
Bates.

all ordinary calculation and endurance. Common business cannot sustain such overwhelming accumulation. It would tend, also, to inflame the avarice and harden the heart of the creditor. Some allowance must be made for the indolence of mankind, and the casualities and delays incident to the best regulated industry: and the law is reasonable and humane, which gives to the debtor's infirmity or want of precise punctuality, some relief in the same infirmity of the creditor. If the one does not pay his interest to the utmost farthing, at the very moment it falls due, the other will equally fail to demand it with punctuality. He can, however, demand it, and turn it into principal, when he pleases; and we may safely leave this benefit to rest upon his own vigilance, or his own indulgence." *Connecticut* v. *Jackson*, 1 *Johns. Ch. Rep.* 13. *Van Benschooten* v. *Lawson*, 6 *Id.* 313.

Whether it was suitable for courts to turn themselves into legislators and become *law makers*, instead of *expounders* of the law made by other and competent authority; or how far they may, with propriety, make *public policy* the basis of their adjudications; or to what extent the decisions on this subject are just and reasonable, we do not find it necessary to determine. We yield to their authority, and are satisfied, that they should be fully sustained; and say, with Lord *Kenyon*, it is our wish and comfort to stand *super antiquas vias*. We cannot legislate; but, by our industry, can discover what our predecessors have done, and will tread in their footsteps. While, therefore, we concede, that interest upon interest, except in particular cases, cannot be collected, we do not assent to the doctrine, that the debtor is under no *moral* obligation to pay it. We think he is bound, by every principle of sound morality, to fulfil a contract into which he has voluntarily entered, to pay interest at the expiration of the time agreed upon; and if he fails to do this, and agrees to pay interest upon that interest, we are not able to discover why a breach of the latter agreement would not be a violation of a moral duty, binding in conscience, and which natural justice and equity require should be performed. At the expiration of the year, it is clear the interest is as equitably due to the creditor, as the principal. If it is not paid, what injustice would be done, by allowing the debtor to agree to pay interest upon that interest? Is the moral obligation to repay the money borrowed and the lawful interest on it.

more obvious and clear, than the duty which exists, *in foro conscientiæ*, to pay for the forbearance of interest, which has accumulated, and which he has neglected to pay? The most skilful casuist would find it difficult to discriminate between the moral justice and equity of the two cases. The accruing interest becomes, equally, a debt, due and payable. It is, then, a subsisting debt; and if the debtor permit it to remain unpaid, and subsequently agrees to turn it into principal, and pay legal interest for the forbearance of it, does not conscience say to him, he is rendering entire justice to his creditor? Is such an agreement any thing more than a contract to pay lawful interest for the forbearance of a debt which is due? Lord *Thurlow*, in *Waring* v *Cunliffe*, 1 *Ves. jr.* 99., upon an application to the court for compound interest, said, my opinion is in favour of interest upon interest, because I do not see any reason, if a man does not pay interest when he ought, why he should not pay interest for that also: But I have found the court in the constant habit of thinking the contrary; and I must overturn all the proceedings of the court, if I give it. In *Raphael* v. *Boehm*, 11 *Ves.* 92. Lord *Eldon* observed, the charge of compound interest in that case, was consistent with every view of moral justice; and the court would shamefully desert its duty to infants, by adopting a rule, that an executor might keep money in his hands without being answerable *as if he had accumulated.* In *Macclesfield* v. *Fitton*, 1 *Vern.* 168., the Lord Keeper said, that the allowance of interest on interest in the case of an assignee of the mortgagee, was reasonable. In *Mowry* v. *Bishop*, 5 *Paige's Ch. Rep.* 98., the chancellor observes: I conclude, therefore, that the *moral* obligation of the debtor to make the usual remuneration for the loss of interest, which the creditor sustains, by the nonfulfilment of his contract, is a sufficient consideration to support a subsequent agreement in writing, to pay the interest on such arrears of interest.

Waiving, however, any further enquiry, relating to the point of *moral* obligation, we proceed to the consideration of the question, whether such a contract is *usurious?* It is, certainly, somewhat of a novel proposition, and for which we do not readily find any analogies, that a contract originally lawful, becomes unlawful, by reason of a subsequent promise to fulfil it. We are aware, that the legal obligation of a contract may sometimes be discharged, in consequence of a subsequent legis-

*Middlesex,*
July, 1836.

Camp
*v.*
Bates.

lative enactment, rendering its performance unlawful; but the cases must certainly be very rare, and we have not found one, in which an agreement to fulfil a lawful contract, is itself unlawful, because it is in fulfilment of the original contract: and yet the claim which is now pressed upon us, partakes very much of this character. It is admitted, the promisee of a note drawing annual interest, may collect the interest at the end of the year. He may do more. He may take a new note for the interest, payable with interest. At the end of the second year, he may take another note, for another year's interest on the principal sum lent, and a new note for the interest due upon the note given for interest; and that may be made payable with interest, and so he may continue to take new notes for interest, every year, until the loan is repaid. *Greenleaf* v. *Kellogg, 2 Mass. Rep.* 568. *Tucker* v. *Randall, Id.* 284. *Hastings* v. *Wiswall,* 8 *Id.* 455. *Connecticut* v. *Jackson,* 1 *Johns. Ch. Rep.* 17. *Pierce v. Rowe,* 1 *N. Hamp. Rep.* 179. *Kennon* v. *Dickens, Cam. & Nor. Rep.* 357. In all this, there is not supposed to be any oppression, extortion, undue advantage, or the indulgence of inflamed avarice, or of a hardened heart, on the part of the creditor. Such notes are not only binding in conscience, but in law and equity. They are not usurious, and can be collected. And yet, when the debtor discharges the same obligation in another form, by compounding the interest, and embodying the whole, both principal and interest, in one security, it is claimed, the transaction not only *tends* to usury, but is oppressive, usurious and void. It is equitable and lawful to fulfil the contract, by recognising its validity, and giving a new note for the interest, *at the end of the year,* payable with interest; but hard, unconscientious and unlawful, to exact a similar fulfilment, at the end of two years, by a note including interest upon the interest, which only varies the *form* of discharging the same contract. Whichever of the two forms of arriving at the same result, is adopted, there is precisely the same amount of money loaned. Neither more nor less is included in the single security, which is taken, at the expiration of any given number of years, than is included in the separate securities, which are given for the principal and the yearly accruing interest. The latter are, clearly, not usurious. By what law, or process of reasoning, can the former be made usurious? There is, in neither case, a reservation of

a sum above the rate of six dollars for the forbearance of one hundred dollars for a year.   Were we to hold the security embracing interest upon the arrears of interest, to be usurious, we should sacrifice substance to form, give legal efficacy to one mode of fulfilling a contract, and deny it to another producing a similar result; and declare, that a new promise to discharge an antecedent legal duty, is unlawful, simply because it is in fulfilment of that duty.   We should require a series of precedents of this court, so numerous, so long continued, and of such paramount authority, that we could not rightfully overrule them, or an act of the General Assembly, before we should declare such to be the law of *Connecticut*.

This subject may be presented in another view.   It is a well settled principle of law, that an action of *assumpsit* for money had and received, may be maintained to recover back usurious interest, which has been paid by the borrower to the lender. The maxims, *in pari delicto, potior est conditio possidentis*, and *volenti non fit injuria*, though formerly applied to such a transaction, are now held to be inapplicable to it.   The statute of usury was made to protect weak or necessitous men from oppression; and the oppressor alone is within the pale of this law.   *Clark* v. *Shee, Cowp*. 200.   *Neville* v. *Wilkinson*, 1 *Bro. Ch. Rep*. 547.   *Smith* v. *Bromley, Doug*. 696. n. 3. *Van Benschooten* v. *Lawson*, 6 *Johns. Ch. Rep*. 313.   *Bosanquet* v. *Dashwood, Talb. Ca*. 37.   But if the defendant, instead of including in the note in suit the compound interest, had paid it to the plaintiff, he could not have maintained an action to recover it back.   *Mowry* v. *Bishop*, 5 *Paige's Ch. Rep*. 98.   No instance of such a recovery, it is believed, can be found in the judicial works of *Great-Britain*, or of this state.   And yet, it is insisted, the note is usurious, although it embraces the same sum, which, if voluntarily paid, could not be recovered back by the debtor, because it would not be the payment of usurious interest.   The *payment* of the compound interest would not be the payment of usurious interest; but the *agreement* to pay it, would be an agreement to pay usurious interest.

There is no doubt an agreement to pay compound interest, will, *in some cases*, be enforced; nor can it be denied, that there are cases, in which interest will, by the courts, be changed into principal and carry interest.   It may lawfully be demand-

Middlesex,
July, 1836.

Camp
v.
Bates.

ed, upon a special agreement made after the interest has become due, or where a settlement of accounts takes place, after it has become due. *Van Benschooten* v. *Lawson,* 6 *Johns. Ch. Rep.* 313. *Connecticut* v. *Jackson,* 1 *Id.* 13. If a trustee convert the trust moneys to his own use, or employ them in his business or trade, he will be charged with compound interest. *Schieffelin* v. *Stewart,* 1 *Johns. Ch. Rep.* 620. *Newton* v. *Bennett,* 1 *Bro. Ch. Rep.* 359. *Foster* v. *Foster,* 1 *Id.* 616. *Raphael* v. *Boehm,* 11 *Ves.* 92. *Dornford* v. *Dornford,* 12 *Id.* 127. If a partner refuses to disclose the profits of moneys he has overdrawn from the partnership funds, compound interest will be allowed against him. *Stoughton* v. *Lynch,* 2 *Johns. Ch. Rep.* 209. So where a trustee has advanced moneys to preserve the trust property from waste, or to secure the title to it, or to remove a lien upon it, interest upon interest has been allowed to him. *Barrell* & al. v. *Joy,* 16 *Mass. Rep.* 221. Ch. J. *Parker* observes, "the court of chancery in *England,* has allowed, or disallowed, compound interest, according to the justice of each particular case." It is permitted to be charged, where it is consistent with the course of dealing between the parties. *Eaton* & al. v. *Bell* & al. 5 *B. & A.* 34. Ex parte *Bevan,* 9 *Ves.* 223. *Moore* & al. v. *Voughton,* 1 *Stark. Ca.* 487. *Newell* & al. v. *Jones,* 4 *C. & P.* 124. Numerous other cases might be cited, which establish the doctrine, that compound interest will be allowed, under special circumstances, not only where there is an agreement to pay it, but where the demand is resisted. The decisions to which we have referred, are sufficient for the purpose of the present argument. If courts will enforce the payment of interest upon interest, in any case where there is no agreement to allow it, and where it is opposed by the party sought to be charged with it, it would seem to follow, that a contract to pay it, could never, of itself, be usurious: for if compound interest be usurious in one case, it must be so in all cases. The usury, if it exists at all, consists in the taking or reservation, corruptly, of a greater sum than at the rate of six dollars for the forbearance of one hundred dollars, for one year. The term, *compound interest,* has but one meaning. It signifies the adding of the growing interest of any sum, to the sum itself, and then the taking of interest upon this accumulation. If, therefore, it be usurious to calculate interest in this way, because it is within the statute, it is equally

*Middlesex,*
*July, 1836.*

Camp
*v.*
Bates.

within it, in every supposable case, and cannot be permitted, without violating the provisions of the statute. Courts cannot repeal legislative enactments, to promote what they may suppose to be the ends of justice. They are bound to enforce the law, whatever hardship it may occasion, and without enquiring into its equity or policy : and yet it is very certain, the allowance of compound interest is often enforced, as being essential to carry into complete effect, the well settled doctrine of courts of equity, on the firmly established principles of courts of law. The inference is unavoidable—the taking or contracting for interest upon interest, is never, *per se,* usurious.

In further illustration of this subject, it may be remarked, that in all the cases of contracts including compound interest, sought to be enforced in equity, where the court has refused to allow it, a decree has been made, (if no other objection has been successfully interposed,) expunging the compound interest merely, and giving effect to the residue of the contract. Bills of foreclosure have been sustained, and decrees passed, upon these principles. It would be difficult to find a reason for these proceedings, if the contract were usurious ; for a mortgage is as much within the statute of usury, as a bond ; and a usurious mortgage, which is declared to be void, can no more be enforced for the benefit of a mortgagee, upon his petition to foreclose, than the usurious debt for which the mortgage was given as security, can be collected, by means of a suit at law instituted for that purpose. *Cowles* & al. v. *Woodruff* & al. 8 *Conn. Rep.* 35.

We have deemed it proper to consider the question presented to us, as if it were a new one, and to be settled upon principle, and the analogies of the law. We have adopted this course, as best calculated to remove unjust prejudices, which have been sometimes indulged against the allowance of compound interest, *in any case,* and at the same time, best adapted to make manifest the distinction between an usurious contract, and one which is merely oppressive, unjust, and "tending to usury." We think, however, the result to which we have arrived in this case, which declares the note in suit not to be usurious, upon the proof offered, is sustained, by the best legal authority. *Le Grange* v. *Hamilton,* 4 *T. R.* 613. *Caliot* v. *Walker,* 2 *Anstr.* 495. *Bruce* v. *Hunter,* 3 *Campb.* 467. *Newell* & al. v. *Jones,* 4 *C. & P.* 124. *Gladman* v. *Henchman,* 2 *Vern.*

135. *Morgan* v. *Mather,* 2 *Ves. jr.* 20. *Waring* v. *Cunliffe,* 1 *Ves. jr.* 99. Ex parte *Bevan,* 9 *Ves.* 223. *Chambers* v. *Goldwin, Id.* 254. *Sheldon* v. *Steere,* 5 *Conn. Rep.* 181. *Childers* v. *Deane* & al. 4 *Rand.* 408. *Forbes* & al. v. *Canfield,* 3 *Hamm.* (*Ohio,*) 117. *Watkinson* v. *Root,* 4 *Id.* 373. *Connecticut* v. *Jackson,* 1 *Johns. Ch. Rep.* 13. *Kennon* v. *Dickens, Cam. &· Nor. Rep.* 361. *Brown* v. *Bent,* 1 *Hen. & Munf.* 4. *Pawling's* exr. v. *Pawling,* 4 *Yeates* 220. *Mowry* v. *Bishop* & al. 5 *Paige's Ch. Rep.* 98. In *Morgan* v. *Mather,* 2 *Ves. jr.* 20., Lord Commissioner *Eyre,* says, "I have no doubt there may be a previous contract for compound interest." *Ashhurst,* Commissioner, observes, compound interest may be allowed, where there is a contract for it, or where it is the usage of trade. And *Wilson,* Commissioner, adds, compound interest is not an unlawful thing in itself;—it is a question of fact, whether in that particular trade, or in any trade, it is to take place or no. In *Raphael* v. *Boehm,* 11 *Ves.* 91., Lord *Eldon* says : " Adverting to all the cases in which the court has frequently considered it to be consistent with every view of moral justice, that individuals in accountable situations, should pay compound interest, though it has not been the habit of the court to give it, I have not the least difficulty in saying, that if I had to make the decree upon this evidence, I should have charged the defendant with compound interest. Where there is an express trust to make improvement of the money, if he will not honestly endeavour to improve it, there is nothing wrong in considering him as the principal, to have lent the money to himself, upon the same terms upon which he could have lent it to others, and as often as he ought to have lent it, if it be principal ; and as often as he ought to have received it and lent it to others, if the demand be *interest, and interest upon that interest.* If the demand goes further than that, my opinion is, that it is not a wrong principle to go as far." In the case of *Mowry* v. *Bishop* & al. 5 *Paige's Ch. Rep.* 98., the Chancellor says, I know of no rule of equity, which can authorize this court to set aside an express agreement to pay a sum of money, which is justly and conscientiously due to another, which agreement violates no rule of law, merely because the party could not, previous to such agreement, have enforced the payment of such money in a court of justice. And I agree with the judges of the superior court of *North-Carolina,* in

the case of *Kennon* v. *Dickens*, that when the payment of the interest at stated periods, forms a part of the contract, and the payment of the principal sum is postponed to a distant period, upon the faith of the agreement for a regular and punctual discharge of the interest at the time agreed upon, equity and good conscience, at least, requires that the debtor should fulfil his engagement, or render unto his creditor the usual equivalent for the non-payment of the periodical interest at the times agreed upon. I conclude, therefore, that the moral obligation of the debtor to make the usual remuneration for the loss of interest, which the creditor sustains, by the non-fulfilment of his contract in such a case, is a sufficient consideration to support a subsequent agreement in writing, to pay the interest on such arrears of interest; and that if it is voluntarily paid, by the debtor, although such payment could not have been legally enforced, independent of such subsequent agreement, it never can be recovered back.

To the cases to which we have referred, we add the authority of a long and well established practice in this state, extensively known, and, as we believe, sanctioned, by the united opinion of the profession, and acquiesced in by the community, conforming to the opinion we have expressed in this case. We think it has been very common to compute interest upon interest, and include it in a new security, in the manner adopted by the parties to this note; and that the legality of such a proceeding was never before called in question, even if it was ever doubted. We might well apply to this case, what we said in the case of *Hawley* v. *Parrott,* 10 *Conn. Rep.* 486. Although practice cannot controul the law, yet where it has been long continued, uniform and unquestionable, it affords high evidence of what the law is; and it would require very cogent reasons, at this day, to disturb it. *Isherwood* v. *Oldknow,* 3 *M. & S.* 396. *per* Lord *Ellenborough.*

We have been unable to find a single adjudicated case, opposed to the doctrine which this opinion declares to be law, and which it is designed to sustain; nor have we been referred to one. We should not have been surprised to have discovered, at least in the earlier period of the *English* law, when usurers were ranked with murderers and thieves, and when the distinction between usurious contracts, which are void, and oppressive contracts which are not enforced, or are set aside, was

not attended to, some decisions, which would countenance the claim now made by the defendant ; but we have found none. If any such exist, they have escaped our research. We are aware, there are some loose expressions of judges, which have been cited, as sustaining the present claim. We have examined the cases in which they are found ; and we believe, nothing more was meant, by these judges, than to declare that securities including compound interest, are, in general, unjust and oppressive. In *Connecticut* v. *Jackson*, 1 *Johns. Ch. Rep.* 13., the Chancellor observes, the uniform course of the decisions is against allowing interest upon interest, as being a hard and oppressive exaction, and tending to usury. Even an original agreement, at the time of the loan or contract, that if interest be not paid at the end of the year, it shall be deemed principal, and carry interest, will not be recognised as valid. The language which he uses, is such as to exclude the inference, that he supposed the contract to be usurious. He says, it is not valid ; it is hard, and oppressive, and *tends* to usury. Lest, however, any such inference should be drawn, he immediately subjoins, such a provision would not amount to usury, so as to make the contract connected with it, illegal, and void at law ; but this court, certainly, and perhaps a court of law, would not give effect to such a provision. Here, the line of distinction between usurious, and merely oppressive contracts, is drawn with precision and accuracy. The agreement to pay compound interest, is, in general, invalid ;—it is " vain, and of no use." A court of equity, certainly, will not enforce it, because it is unjust, and oppressive, and tends to produce the same result, which usury in fact produces, *viz.* oppression ; but it does not amount to usury. It is not within the statute making void usurious agreements. It is unconscientious, harsh, and ruinous to the debtor, and, therefore, not to be supported ; or, as expressed in different language, in *Schieffelin* v. *Stewart*, 1 *Johns. Ch. Rep.* 620., in the ordinary case between debtor and creditor, compound interest is not *recoverable*. In *Van Benschooten* v. *Lawson*, 6 *Johns. Ch. Rep.* 313., the same accurate distinction is made. The agreement to pay compound interest, is spoken of as one not allowed in a court of equity— as leading to oppression—as oppressive, and therefore, inadmissible—as tending to great and inevitable abuse,—as executed when the debtor is comparatively dependent, and probably dis-

*Middlesex,*
*July, 1836.*

Camp
v.
Bates.

*Middlesex,*
*July, 1836.*

Camp
*v.*
Bates.

tressed, by the creditor having the evident advantage of power and superiority. Not an intimation, however, is made, that it is usurious. Indeed, if it were so, there would seem to be no necessity for expressing, in so many varied forms, the true principle which governs courts in refusing their aid to enforce it. They might, then, well say, instead of seeking for other reasons, such an agreement is prohibited by statute, which declares it usurious, and void, and therefore, we do not support it. In *Clancarty* v. *Latouche,* 1 *Ball & Beatty* 430., Lord Chancellor *Manners* says, in the case of a mortgage security, it would be fair for the mortgagee to call for interest due at the end of the year, and if not paid, to insist on its becoming principal ; but if it constituted part of the original agreement, it would be usurious and oppressive. Although the word *usurious* is used, by the reporter, it should be understood as having the same meaning as the word *oppressive,* with which it is connected, and as used in contrast with what precedes it. The demand of interest, by the mortgagee, at the end of the year, and if not paid, to have it converted into principal, would be *fair ;* but an original agreement so to convert it, would be oppressive. It certainly requires unusual power of discrimination, to comprehend how an agreement, *a priori,* to convert interest into principal, is hard, unreasonable and oppressive, and a similar agreement, after the interest has become due, is fair, just and equitable ; but we think, no power of intellect is sufficient to show, that one of these agreements is lawful and valid, and the other usurious and void. Chancellor *Kent,* in the cases to which we have referred, although he quotes the language of Lord *Manners,* does not adopt that part of it, which condemns the contract as usurious ;—for he calls such a contract oppressive, inadmissible, leading to abuse, unavailing. In ex parte *Bevan,* 9 *Ves.* 222., Lord *Eldon* observes, that such contract would not be legal. He explains the sense in which the term is to be understood, in the subsequent case of *Chambers* v. *Goldwin,* 9 *Ves.* 254. There is nothing unfair, or perhaps, illegal, (he says,) in taking a covenant originally, that if interest is not paid at the end of the year, it shall be converted into principal. But this court will not permit that, as tending to usury, *though it is not usury.* The case of *Sackett* v. *Bassett* & al. 4 *Madd. Ch. Rep.* 37., has been pressed, by the defendant, as an authority to sustain his claim in the present case. No opinion

was expressed, by the court, on the point in question. The vice-chancellor observed, that it was proper to be considered, by a court of law; and directed the exceptions to stand over until the question of usury was tried at law, in an action by the mortgagee on the covenants in the mortgage deed

*Middlesex,*
July, 1836.

Camp
*v.*
Bates.

We have noticed all the cases to which our attention was called in the argument of the defendant's counsel. We think they furnish no support to the defence of usury interposed to prevent the collection of the note in suit. We believe this defence is destitute of any solid foundation in law, justice, equity, or good conscience; that there is not a single precedent to sustain it; and that the clearest principles of moral justice, as well as numerous adjudications in law and equity, demand of us to give the plaintiff the benefit of the verdict, which the jury have returned in his favour. The judge at the circuit decided correctly; and, consequently, the motion for a new trial is denied.

The other Judges concurred in this opinion.

New trial not to be granted.