MOSHER vs. CHAPIN, impleaded with CHASE.

Certain land mortgaged by A to B was advertised for sale on a judgment of fore-
closure, and just before the day of sale, C (a stranger to the mortgage) repre-
sented to B that he had become interested in the property, desired to help A,
was acting in concert with him, and, for the purpose of making all he could
out of the property, requested B to put off the sale, and give him an opportu-
nity to sell portions of the land to various purchasers; and a verbal agree-
ment was then made between them, that the sale should be postponed one
year; that in the meantime C might sell portions of the property for one half
cash and the balance in twelve months on mortgage, and B would release
such portions from the lien of the decree, taking the cash derived from such
sales, and an assignment of the mortgages; and that C, in consideration
thereof, should pay all the expenses of the foreclosure, (including a solicitor's
fee of $100,) and in computing the amount due on said mortgage, should add
to the 12 per cent. interest therein reserved, interest at the same rate upon
the annual installments of interest which had accrued thereon, from the time
they severally fell due, and should pay the same rate of interest upon the
whole amount found due on the mortgage by that computation, until the
same should be paid. Sales of portions of the land were made by C, and
portions of the proceeds paid to B, the first of which payments was made on
the 13th of May, 1856, and was *applied* by B, in pursuance of said agree-
ment, but the mortgages given to C by the purchasers were not assigned
to B, for which reason B did not release the land sold from his mort-
gage. About a year after the above verbal agreement was made, to
a request of B that the contract should be put in writing, C answered,
that A himself would come and arrange it, and A called soon after and
executed a written agreement, signed by himself alone, and ante-dated May
13, 1856, by which he promised to pay 12 per cent. interest on the balance
remaining due on the decree, after *applying* thereon, and in payment of said
expenses of foreclosure, the payment made on the day last mentioned, which
balance was computed in said agreement according to the terms of said verbal
contract between B and C. On a motion by C to compel the sheriff, who had
again advertised said land for sale on the decree, to receive, in satisfaction
thereof, the amount which would be due thereon according to its terms, with-
out reference to said verbal or written agreement: *Held*, that if the agreement
to pay the compound interest could not have been enforced while it was execu-
tory, on the ground that contracts to pay more than seven per cent. interest
are required by the statute to be in writing, yet as C, through A as his agent,
had assented to the application of the first payment to the discharge of that
interest, that application should not be disturbed.

*Held*, also, that the agreement in relation to the compounding of the interest was
not usurious.

*Held*, also, that the stipulation to pay the expenses of foreclosure, including a
solicitor's fee, did not make the contract usurious.

Whether the facts disclose a consideration distinct from the forbearance of the
debt, which would sustain an independent agreement on the part of C to pay
a sum greater than that allowed by law to be taken for interest, *quære*.

*Held*, further, that the written agreement for the payment of twelve per cent. in-
terest on the balance so computed to be due on the decree, though signed by
A only, must be regarded as having been made with the assent of C, and he

is estopped from denying that A was competent to make it in a form that would give effect to said verbal agreement.

APPEAL from the Circuit Court for *Rock* County.

*Chapin* applied to the circuit court for Rock county, for an order upon *Mosher*, to show cause why the sheriff of said county should not receive the sum of $1,612 74 (which had been tendered to him by *Chapin*), in full satisfaction of a decree made by that court for the sale of certain premises mortgaged by one Chase to *Mosher*, and subsequently sold by the former to *Chapin*, and, at the time of the application, advertised for sale by the sheriff, under said decree. After a hearing, the court ordered the sheriff to sell the premises on a certain day, unless on or before that day Chase should pay, or cause to be paid, to *Mosher*, the sum of $2,529 01, and from this order *Chapin* appealed. The grounds of the application, with all the other material facts of the case, are stated in the opinion of the court.

*Knowlton, Prichard & Jackson*, for appellant:

1. If we admit the alleged parol agreement between *Mosher* and *Chapin*, the latter was not bound thereby. No contract to pay more than seven per cent. is binding, unless in writing. 2. The written agreement of Chase with *Mosher*, to pay more than 12 per cent. interest on the sum due, for the forbearance of the debt, was absolutely void by chap. 55, Laws of 1856. 3. This written agreement does not bind *Chapin*. Chase nowhere in the instrument intimates that he was acting for *Chapin*. *Mosher* had no right to apply the payments made by *Chapin*, in the manner indicated by that agreement. The appellant is, therefore, entitled to have the mortgaged premises discharged from the lien of the decree, upon payment of the balance which remains after a proper application of those payments. 4. Even if *Chapin* agreed to be bound by Chase's contract to pay 12 per cent., such agreement to answer for the debt of another, not being in writing, stating the consideration, was void by the statute of frauds.

*Cary & Pratt*, for respondent. [No argument on file.]

October 1₅.     *By the Court*, PAINE, J. The material facts upon which this appeal is to be determined, are these: *Mosher* was the

owner of a mortgage executed by Chase, and had recovered a judgment of foreclosure and sale, to make the sum of four thousand two hundred and fifty-six dollars. The premises covered by the mortgage were advertised for sale, but just before the time appointed for the sale, *Chapin* went to *Mosher* and told him that he had become interested in the property, that Chase had got into difficulty, and he (*Chapin*) desired to help him out, and for the purpose of making all he could out of the property, he was desirous of selling portions of it to various purchasers, and wished *Mosher* to put off the sale under the decree and give him an opportunity to do so. He stated at this time also, that he was acting in concert with Chase in the matter. A verbal agreement was accordingly made to the effect that *Mosher* should postpone the sale one year, and that in the mean time, *Chapin* might sell portions of the property, and *Mosher* would release such portions from the lien of the decree, and take an assignment of the mortgages which the purchasers might give, &c. As a consideration for this agreement on the part of *Mosher*, *Chapin* agreed to pay compound interest on some portion of the interest as to which Chase had been in default previous to the decree, also certain expenses incurred by *Mosher*, including a solicitor's fee of $100, and to pay interest at 12 per cent., on the amount of the decree which should remain unpaid during the year for which the sale was postponed. Various sales were made, and portions of the proceeds were paid over to *Mosher's* attorney; but the mortgages given by the purchasers were not assigned as agreed. Nor did *Mosher* release any portion of the land sold, though ready to do so on the assignment of the mortgages. In consequence of this part of the arrangement not having been executed, *Mosher's* attorney wrote to *Chapin*, requesting to have the agreement put in writing, so that there should be no dispute by Chase, &c., and received a reply that Chase himself would come and arrange it. This was a little more than a year after the arrangement was first made. Chase did call soon after, and executed a written agreement to pay twelve per cent. interest on the balance remaining due on the decree, after applying thereon, and in payment of the various items agreed by

*Chapin* to be paid, a remittance of $1,694, received by *Mosh-er's* attorney, on the 13th day of May, 1856. The balance remaining after this application, was $2,972 89. This agreement was signed by Chase alone. *Mosher*, at the same time, executed an agreement, reciting that whereas Chase had that day paid him the expenses, compound interest, &c., he, in consideration thereof, would extend the time on the balance, and delay the sale for one year.

These papers, though executed in 1857, were dated back as of the 13th of May, 1856, the time when the first payment was received by *Mosher's* attorney. Divers payments were subsequently made, when this application was made by *Chapin*, setting forth that he had become the purchaser of the property after the decree was rendered; that payments had been made which reduced the amount then due to the sum of $1,612 74; and that the sheriff had advertised the premises for sale, and asking for an order for *Mosher* to show cause why he should not receive that amount and discharge the decree. On that order *Mosher* showed, as cause, the agreement and facts above set forth. And the point of dispute is, whether any effect can be given to that agreement, as far as *Chapin's* rights are concerned, or whether he is entitled to have the property discharged on payment of the original decree with interest at the rate of seven per cent. The latter is the claim asserted by him, and the amount he admits to be due is computed upon that theory, whereas, if the agreement is carried out, a much larger amount is due. There can be no doubt that the agreement was made as claimed by *Mosher*. The weight of evidence derived from the affidavits fully establishes that fact; and it is altogether in accordance with the natural probabilities of the case. For it is incredible that *Mosher* should have employed an attorney to make a journey from Racine to Janesville to make this agreement, and then postpone the sale of this property for three or four years, allowing portions of it to be sold by *Chapin*, if he was to receive nothing but his original decree, with interest at seven per cent. The justice of the matter is, therefore, clearly on the side of *Mosher*: and the question is, whether there

is any thing in the rules of law which prevents the accomplishment of justice in this particular case.

It is claimed, first, that in order to make a valid agreement for more than seven per cent. interest, it must, under our statute, be in writing. And then it is said, that even if *Chapin* did make this verbal arrangement, yet, it not being binding in law, there was no authority to apply any subsequent payments in pursuance of it, but they should be applied on the original decree, with interest at seven per cent. It may be observed, that this objection does not extend to the solicitor's fees, and the expense items agreed to be paid by *Chapin*. For there is no statute requiring such an agreement to be in writing. But even if there was, we are of the opinion that as to these items, and as to the compound interest agreed upon, the objection cannot prevail, for the reason that it appears that *Chapin*, acting through Chase, as his agent, assented to the application of the first payment to those items. Cary states in his affidavit, that when he received the $1,694, on the 13th of May, 1856, he applied it in pursuance of the verbal agreement previously made. Afterwards he wrote to *Chapin* desiring that the matter might be put in writing, &c., and *Chapin* replied that Chase would call and arrange it. Chase did call, and did assent to the application which had been made by Cary, for he received from *Mosher* a written agreement to extend the time, reciting that these items of expense, and the compound interest, had been paid, and he himself executed a written agreement to pay twelve per cent. interest on the balance due on the decree, which balance was struck after applying the first payment as just stated, and then on the decree, as far it would go. Now it seems to us clear that Chase was the agent of *Chapin* in assenting to that application. *Chapin*, by his letter to Cary, had expressly appointed him for that purpose, and Chase stated that he came at the request of *Chapin*. This application of the first payment is, then, as though *Chapin* himself had assented to it. And, therefore, even if this part of the agreement could not have been enforced while executory, yet if the party himself voluntarily made payments, and applied them upon it, there is no reason why his action

should be set aside  But it is said this part of the agreement was usurious.  We do not think the agreement to pay the solicitor's fees and the expenses, makes it so.  A provision for the payment of a specified sum as solicitor's fees, in case of foreclosure, is commonly inserted in mortgages in the first instance, and we have never heard it suggested that this made the agreement usurious, even though providing for twelve per cent. interest.  And there seems, really, no reason for saying so.  For that is an item of expense necessarily incurred by the party, and if the debtor promises to pay it, it can in no just sense be said to be paid for the forbearance of the loan.  If any such thing should be resorted to as a mere cloak for usury, it would, of course, stand on the same footing with all other attempts of that sort; but nothing of the kind appears here.  On the contrary, the items of expense, and probably a large part of the solicitor's fee, were incurred at the express request of *Chapin* himself, who desired them to go to Janesville to effect this arrangement. It, therefore, did not constitute usury.  *Harger vs. McCullough*, 2 Denio, 119; *Kimball vs. Boston Athenæum*, 3 Gray, 225; *Busby vs. Finn*, 1 Ohio St. Rep., 409.

Neither do we think the agreement to compound the interest upon some of the previous installments of interest, as to which Chase had been in default, makes the contract usurious.  It is true that compound interest is not enforceable as a general rule.  But this has been placed upon grounds of policy, and because it was hard and oppressive, and not strictly upon the ground of its being usury.  And it cannot, in truth, be said to be so.  For it is capable of mathematical demonstration, that by compounding the interest, no more is recovered than the exact rate allowed by law for the forbearance of a debt.  This whole subject is very fully and ably discussed in *Camp vs. Bates*, 11 Conn., 487, and it seems impossible to deny the conclusion of the court that such a transaction is not usurious.  See also *Meeker vs. Hill and others*, 23 Conn., 574.

Having come to this conclusion, that the agreement was not usurious, it is unnecessary to examine whether it disclosed a consideration separate and distinct from that of for-

bearance, which might sustain an agreement on the part of *Chapin* to pay a sum beyond legal interest. There certainly would seem to have been something more than mere forbearance. In the case of *Neefus vs. Vanderveer and others*, 3 Sandf. Ch. R., 268, a party having a large mortgage upon a tract of land, consented to cancel it, and take in its stead a number of small mortgages on corresponding portions of it, for the same aggregate amount, payable at the same times, with the same interest. For doing this he received five hundred dollars, and the court held that it was not usury, inasmuch as there was a consideration entirely separate and distinct from the forbearance. In this case the agreement by *Mosher* to allow portions of the mortgaged premises to be sold, and to release such portions from the decree, and to take assignments of the smaller mortgages given by the purchasers, would seem to be of a very similar nature. He also agreed to postpone the sale of the property, which was already advertised. In *Smith vs. Algar*, 20 E. C. L., 452, the plaintiff having a *fi. fa.* for 60 pounds against the goods of a third party in the defendant's possession, forbore to enforce it, on the defendant's promise to pay him 107 pounds in seven days. Lord TENTERDEN said: "But he had a right to levy 60 pounds, and if, in consideration of his forbearing that, the defendant promised to pay him the larger sum; if the inconvenience of an execution against these goods at the time in question was so great, that the defendant thought proper to buy it off at such an expense—I do not see that the consideration is insufficient for the promise." PARKE, J., said; "There is no reason why the forbearing to execute such a writ should not be a good consideration for a promise, by a third person, to pay double the amount at the end of seven days." No question of usury seems to have been suggested in the case, but the court seems to treat the forbearance to execute the writ, at least as to third persons, as a consideration entirely different from that of forbearance of the debt. If this is a correct view of the case, it would tend to show that the forbearance by *Mosher* to execute his order of sale might, as to *Chapin*, be a good consideration for an agreement to pay a specific sum even greater than the legal

June Term,
1860.

MOSHER
v.
CHAPIN.

interest. See, also, *Fussel vs. Daniel*, 29 E. L. & E., 369. But if it would be a good consideration for a third person, it is somewhat difficult to see why it would not be a good one also for the debtor himself to agree to pay more. And if that were allowed, it is evident that all the evils designed to be prevented by the usury laws, would follow, if, whenever the creditor had obtained his judgment, he might then, in consideration of forbearing to execute it, bargain with the debtor for whatever compensation his necessities might induce him to promise. It has, accordingly, been held that such an agreement was usurious. *Hopkins vs. Koonce*, 6 Gratt., 387; *Siter vs. Sheets*, 7 Ind., 132. But, as before remarked, we shall express no opinion as to whether there was in this case, such a consideration as would have supported an independent agreement by *Chapin* to pay a sum greater than that allowed by law to be taken for interest.

The only further point to be noticed is, as to the effect of the written agreement made by Chase to pay twelve per cent. on the balance of the decree. It was said that this bound Chase only, and could not affect the land which *Chapin* had bought. This would undoubtedly be so except for the peculiar facts of this case. But upon those facts we think *Chapin* is estopped, in equity, from claiming that an agreement made by Chase, even in his own name only, was not valid and effectual to accomplish the verbal agreement which he had previously made. *Chapin* told *Mosher*, when he first came to him, that he was acting to help Chase, and was acting in concert with Chase. When subsequently written to, to put the agreement in such shape as to be binding in law, he replied that Chase would come and arrange it. And *Mosher* and his attorney had a right, from all this, to assume that Chase was the party beneficially interested, and that for that reason *Chapin* had sent him as the proper person to carry out the arrangement. When they accordingly made the agreement with him, we think *Chapin* is estopped from setting up that he was incompetent to make it effectual. They dealt with Chase as competent for that purpose, upon *Chapin's* statement, and upon his direct reference to Chase, when applied to to act himself. It is then against

equity for him now to set up that Chase had no such power.

The order appealed from is affirmed, with costs.