Beckwith *v.* Trustees of Hartford, Providence & Fishkill Railroad.

---

ALONZO S. BECKWITH *vs.* THE TRUSTEES OF THE HARTFORD, PROVIDENCE AND FISHKILL RAILROAD.

A railroad company, by authority of the legislature, issued bonds, payable at a future time, with interest payable semi-anually, at the rate of seven per cent.

The bonds became due and remained unpaid. Held, that the damages to which the holders were entitled for the detention of the principal after it became due, were to be estimated at the contract rate of seven per cent, and not at the legal rate of interest, six per cent.

An amicable submission, upon an agreed statement of facts, reserved by the superior court for the advice of this court.

The plaintiff was the holder of eight bonds of the Hartford, Providence and Fishkill Railroad Company, for $1,000 each, with interest payable semi-annually at the rate of seven per cent per annum, all of which were over due. These bonds were a part of a large issue of bonds, authorized by an act of the legislature, and secured by a mortgage of the railroad of the company with its equipment and the franchises of the company. Since the issuing of the bonds the road had passed into the hands of the trustees under the mortgage. The defendants were the successors of the original trustees in the trust, and as such trustees were operating the road for the benefit of the bondholders. The interest coupons were paid up to the time when the principal of the bonds fell due, but the trustees declined to pay interest on the bonds after that time at a greater rate than six per cent per annum. The net income of the road was sufficient to pay seven per cent interest on the bonds. It was for the interest of the holders of the bonds that the trustees should continue to operate the road and pay the interest on the bonds, instead of selling the road and making an immediate settlement of the bonds.

Upon these facts the question was submitted to the court, whether the plaintiff was legally entitled to seven per cent interest on the bonds held by him, or to only six per cent.

*Hungerford* and *Cone*, for the plaintiff, cited *Robinson* v. *Bland*, 2 Burr., 1086 ; *Thorndike* v. *U. States*, 2 Mason, 1 ; *Miller* v. *Burroughs*, 4 Johns. Cha., 436 ; *Tindall* v. *Meeker*, 1 Scam., 137 ; *Aldrich* v. *Sharp*, 3 id., 261 ; *Phinney* v. *Baldwin*, 16 Ill., 108 ; *Kohler* v. *Smith*, 2 Cal., 597 ; *Prigden* v. *Andrews*, 7 Texas, 461 ; *Hopkins* v. *Crittenden*, 10 id., 189 ; *Wilson* v. *King*, 1 Morris, (Iowa,) 107 ; *Burkhart* v. *Sapping*

*ton*, 1 Green, (Iowa,) 66; *Bates* v. *Wernwag*, 4 Blackf., 272; *Kilgore* v. *Powers*, 5 id., 22; *Thornton* v. *Fitzhugh*, 4 Leigh, 209.

*L. F. Robinson* and *Hamersley*, for the defendants, cited *Calton* v. *Bragg*, 15 East, 223; *De Havelland* v. *Bowerbank*, 1 Camp., 50; *Gibbs* v. *Fremont*, 20 Eng. L. & Eq., 558; Sedgwick on Damages, 233, *et seq.*; *Selleck* v. *French*, 1 Conn., 32; *Bridgeport Bank* v. *Dyer*, 19 id., 141; *Fisher* v. *Bidwell*, 27 id., 363, 371; *Boyce* v. *Edwards*, 4 Pet., 111; *Cooper* v. *Sanford*, 4 Yerg., 452; *Verree* v. *Hughes*, 6 Halst., 91; *Ludwick* v. *Huntzinger*, 5 Watts & Serg., 51; *Gaillard* v. *Ball*, 1 Nott & McC., 67.

HINMAN, J. We are of opinion that the plaintiff in this case is entitled to seven per cent per annum for the detention of his money after the principal became due. Technically speaking, it is no doubt true that the sum recoverable for such detention is treated as damages for the breach of the contract, rather than interest for the money loaned, because, strictly speaking, interest can only be claimed under a contract to pay it, either express or implied, and the express contract of course ceased on the day when the principal was to be paid, and no implied contract can be raised from a total refusal to pay anything. But damages are recoverable for the breach of the contract; and courts, in order to give to him to whom the money is due what he fairly may be supposed to have suffered by withholding it from him, and at the same time to prevent the borrower from making a profit by the breach of his contract, have regulated the amount of damages for such breach by the usual rate of interest at the place where the money is detained. This, though an arbitrary rule, will generally operate justly, and is much more convenient than any other which could be adopted. But the usual rate of interest at any place, which of course is but another mode of speaking of the legal rate at such place, is itself as arbitrary a provision of law as the damages dependent upon it, and is by no means uniform. It is not only known to differ in different states and

countries, generally depending upon positive statutes, but may vary from the ordinary or more general rate by the parties agreeing upon a lesser rate, or, if authorized so to do, as in the case under consideration, by their agreement upon a higher rate, or there may be a general statute authorizing a higher rate for money borrowed for some particular purpose, or by a particular class of persons or corporations ; as is the case in respect to money borrowed by railroad companies under the act of 1849. Rev. Stat., (Comp. 1854,) 750, § 23. And the different rates thus agreed upon become the legal rates of interest in respect to particular contracts during their existence. And the rates of interest thus established by agreement must be presumed to be just and equitable under the circumstances, that is, a fair compensation in such case for the use of money between the parties during the time the contract had to run. Then why should we not presume, as between the same parties, that such continues a fair compensation for its use until the contract is performed, as well after as before the day when the principal was to be paid, and thus permit the rate of interest agreed upon to control the damages to be paid for the detention of the money as well as the interest for its use. There is no equity in favor of one rate of interest rather than another, where they are both legal, and within reasonable limits, and the defendants ought not to complain so long as it is in their power, by paying the principal, to protect themselves from paying what they thought a reasonable rate when they borrowed the money.

The borrowers never could have expected to derive a benefit in respect to the rate of compensation to be derived from their breach of contract. Nor is there any reason to suppose that they could now obtain the money at any less rate, since the general law authorizing them to pay seven per cent per annum was undoubtedly passed for their benefit, because they were unable to obtain money at any less rate. We therefore advise the superior court that the plaintiff is entitled to the same percentage for the detention beyond the day when the money was to be paid, that he was entitled to as interest before that day.

We have come to this conclusion without much reference to the authorities. In our own reports we have nothing directly on the subject, and the cases from other states are so conflicting that we have not thought the weight of authority from that source to preponderate very decisively either way. We observe however that an English case, decided in 1857, (*Keene* v. *Keene*, 3 Com. Bench, 144,) supports our decision most fully; and it is perhaps worthy of note, that the rate of damages there allowed was as high as ten per cent per annum.

We therefore advise that the plaintiff is entitled to damages to be estimated at the rate of seven per cent upon the principal sum due.

In this opinion the other judges concurred.

Advice that plaintiff is entitled to seven per cent.