716 F.2d 319
 32 Fair Empl.Prac.Cas. 1850,
32 Empl. Prac. Dec. P 33,834
Paris KINCADE, et al., Plaintiffs-Appellants,
v.
GENERAL TIRE AND RUBBER COMPANY, Defendant-Appellee,
Jobie EDWARDS and Willie F. Mims, Plaintiffs-Appellants,
v.
GENERAL TIRE AND RUBBER COMPANY, et al., Defendants-Appellees.
 No. 82-1366.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 3, 1983.
 
 John W. Walker, Walker, Hollingsworth & Jones, Little Rock, Ark., Bachmann & Weltchek, Andrew M. Weltchek, New Orleans, La., Benita Terry Jones, Dallas, Tex., for plaintiffs-appellants.
 Carrington, Coleman, Sloman, Johnson & Blumenthal, Peter Tierney, Marvin S. Sloman, Dallas, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Texas.
 Before BROWN, REAVLEY and RANDALL, Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 In February of 1975, the appellants filed a class action suit against General Tire and Rubber Company alleging that General Tire had engaged in plant-wide racial discrimination in employment at its Waco, Texas plant. Following a period of discovery, the parties reached a Settlement Agreement (Agreement) which they filed with the District Court on October 25, 1977.
 
 
 2
 Several members of the class objected to certain terms of the Agreement. But, after hearing their objections, the District Court approved the proposed settlement on July 5, 1978. The objecting class members appealed the Court's approval of the Agreement. In Kincade v. General Tire and Rubber Co., 635 F.2d 501 (5th Cir.1981), we affirmed that approval.
 
 
 3
 Under the Agreement, General Tire was to pay to the plaintiff class a Settlement Fund of $90,000, of which $30,000 was for attorney's fees. General Tire did deposit the $90,000 into the Registry of the District Court, but only after this Court's decision on appeal. Ten weeks later on July 24, 1981, the appellants filed in the District Court a motion requesting the Court to order General Tire to pay to the plaintiffs interest on the $90,000 Settlement Fund from July 5, 1978 (when the agreement was approved by the District Court) to May 5, 1981 (when General Tire did deposit the money with the District Court). The District Court denied the motion. 540 F.Supp. 115. The appellants appealed.
 
 
 4
 Because the parties to the Agreement did in fact intend that the Settlement Fund be handed over to the District Court in July of 1978, we reverse and remand the case to determine the amount of interest owed by General Tire.
 
 Discussion
 
 5
 On July 5, 1978, the District Court approved the entire Agreement and ordered that
 
 
 6
 forthwith following the entry of this Order, the General Tire and Rubber Company, pursuant to paragraph 17 of the Settlement Agreement, shall deposit with the United States District Clerk for the Western District of Texas, Waco Division, the Settlement Fund established in paragraph 17 of the Settlement Agreement.
 
 
 7
 Read alone, paragraphs 17[1] and 20[2] of the Agreement suggest that General Tire could hold onto the $90,000 until all appeals had been exhausted. And, the District Court which denied appellants' motion for interest took careful cognizance of the paragraphs. There is, however, a paragraph in the Agreement which the Trial Judge apparently did not have the opportunity to read, which was partially omitted from the briefs of both sides in this appeal, and which only came to light fully from our probing during oral argument.
 
 
 8
 18.B. The Clerk shall hold the Settlement Fund and will not pay or otherwise distribute any portion of the Settlement Fund to any person except upon specific order of the Court, and no such payment or other distribution shall be ordered until the Final Judgment described in paragraph 20 below is "final" (as that term is defined in paragraph 21 below), except in the event of termination of this settlement agreement in accordance with paragraph 24 below. The parties will recommend to the Court that an order be entered authorizing and directing the Clerk to place the Settlement Fund in an interest bearing savings account in a national bank until its payment and distribution is directed by order to the Court.
 
 
 9
 As we read the Agreement all parties intended for General Tire to deposit the $90,000 Settlement Fund with the District Court immediately upon the Court's approval of the Agreement. All parties expected that the District Court would order the Clerk to place the funds in an interest-bearing account and, as expressly provided for in paragraph 18.B., that no money would be distributed by the Clerk until the judgment became a "Final Judgment," paragraph 20, supra.
 
 
 10
 Not surprisingly, General Tire points out language in the Agreement which seems to be at odds with our conclusion. On balance, however, we conclude that the intention of the parties was for the money to be paid into the Court upon the Court's approval of the Settlement Agreement, but that the money be distributed to the parties, along with interest earned, only when the order was final.[3]
 
 
 11
 Thus, the District Court having misconstrued the contract the case must be reversed and remanded. We do not begin to indicate, or for that matter even intimate by the gentlest breath, what should be done on remand. With the same sort of non-binding comments made occasionally by trial judges to a jury, we have some observations for consideration by the Trial Judge. Had either or both parties requested, as paragraph 18.B. envisaged, an order to place the funds in an acceptable interest-bearing deposit, this undoubtedly would have been done,[4] as the standing orders of the District Court called for[5] and as is now required by the 1983 Amendment to F.R.Civ.P. 67.[6]
 
 
 12
 Had such request been made, what the interest rate would have been, we do not presently know. While offhand the first appearance is that the appellants might now get a windfall, it is equally plain that for all of the period (July 5, 1978 to May 5, 1981) General Tire had the full use of its money, to use in its own enterprises or, in its judgment, invest in possibly more profitable investments such as money market funds. But these are matters best left to the Trial Judge. The Judge is to determine how the blame, if any, is to be cast on either one or both parties, each of whom had equal access to the Court and failed to seek Court direction, and one of whom (appellants) acquiesced without a cheep (in the noncompliance by General Tire of its obligation to pay the funds into Court) which would have triggered the motion to deposit in an interest-bearing account. Resolving this riddle, which is the joint product of (i) failure to perform by one, (ii) acquiescence by the other, and (iii) failure by both to earlier seek succor from the Court, the Judge will have to determine what the appropriate, fair interest rate, if any, might have been.
 
 
 13
 REVERSED and REMANDED.
 
 REAVLEY, Circuit Judge, dissenting:
 
 14
 I agree with the district judge and would affirm his judgment.
 
 
 15
 The only question is General Tire's obligation under the settlement agreement. The parties and the judge did anticipate that the $90,000 was to be deposited with the clerk when the judge approved the settlement in 1978, and it was in fact deposited. But what was not expected was the appeal and long delay before the matter became final. The consequences of that delay, nevertheless, were provided for by the agreement. It seems very clear to me that General Tire had no obligation until the end of the appeal in 1981. Under paragraph 25 there was no obligation until the judgment became "final" (in the sense of paragraph 20) and under paragraph 17 General Tire was to pay the money to the clerk at the time the judgment became "final" (in the sense of paragraph 20). The sense of paragraph 20 does not leave any room for doubt:
 
 
 16
 20. Final Judgment Deemed "Final": Such Final Judgment shall be deemed and considered "final" for purposes of this settlement agreement upon the expiration of time for all appeals therefrom or (in the event an appeal is taken) the affirmance thereof on appeal (or the dismissal of the appeal for any reason) and the expiration of time for any further appellate procedures.
 
 
 
 [1]
 Paragraph 17 of the Agreement reads:
 Settlement Fund. General Tire will pay to the United States District Clerk for the Western District of Texas (the "Clerk") for the benefit of the plaintiff class concurrently with the entry by the Court of the Final Judgment as defined in paragraph 20 hereof, the amount of $90,000 (herein the "Settlement Fund"). In addition, General Tire will pay directly to attorneys for plaintiffs an additional amount of up to $5,000 in payment of taxable court costs incurred by the representative plaintiffs in the action and reasonable expenses, if any, incurred by attorneys for plaintiffs incident to the settlement of the action if incurred subsequent to the execution of this agreement by all parties. Such expenses will be paid upon presentation to the General Tire's counsel of satisfactory evidence of such expenses. No costs of court, expenses, expert fees or attorneys' fees, or any fees or expenses other than those amounts set forth in this paragraph shall be taxed to General Tire.
 
 
 [2]
 Paragraph 20 reads:
 Final Judgment deemed "Final". Such Final Judgment shall be deemed and considered "final" for purposes of this settlement agreement upon the expiration of time for all appeals therefrom or (in the event an appeal is taken) the affirmance thereof on appeal (or the dismissal of the appeal for any reason) and the expiration of time for any further appellate procedures.
 
 
 [3]
 Paragraph 21, for example, clearly contemplates that the money would already have been placed into the Court Registry at the time a final judgment was entered
 
 
 [21]
 Disbursement of Settlement Fund. When the Final Judgment becomes "final", as defined above, the attorneys for the plaintiffs will request the Court to enter an order:
 A. Authorizing and directing the Clerk to distribute the Settlement Fund, except as otherwise provided herein, (together with any interest earned thereon ), to the members of the plaintiff class as directed by the Court; and
 B. Authorizing and directing the Clerk to pay from the Settlement Fund to Walker, Kaplan & Mays, P.A. the amount of attorneys' fees awarded to them by the Court.
 (emphasis added).
 
 
 [4]
 Special Concurrence of Judge Brown:
 I write this as a special concurrence as it relates to facts not formally a part of the record but which can judicially be determined if thought appropriate or necessary by any party, the Court, or the judge and which might be helpful to the resolution on remand.
 Beginning with my first formal meeting in February 1977 as Chief Judge of the Circuit with the Chief Judges of all the districts of the then Fifth Circuit (18 mainland), there was great concern about the amount of money in Fifth Circuit District Court Registry funds, nearly all then being routinely deposited in U.S. treasury accounts even though the Government did not, and never could, have a claim to any or all such sums. (Of the $20 million of such funds nationally, the Fifth Circuit accounted for $9,900,000.) By concerted administrative action, all were determined to put an end to this practice--in reality a non-practice--to carry out the mandate of paragraph 2 of the 1976 resolution of the Judicial Conference of the United States, which resolution provided:
 
 
 [1]
 Where it is reasonably predictable that the particular registry funds or substantially all of them will remain with the United States, or that the United States has the substantial beneficial interest therein, or that the interest of justice so requires, such funds should be deposited in Treasury Accounts pursuant to Title 31, United States Code, Sec. 725V
 
 
 [2]
 Whenever practical and feasible all substantial sums of registry funds not deposited in Treasury accounts pursuant to Title 31, United States Code, Sec. 725V should be placed in some form of (substantial) interest-bearing accounts (which will earn interest at approximately the existing market rate)
 
 
 [3]
 Courts should avoid the unnecessary placing of substantial sums, interest free, in private banks
 By informal resolution the district courts were requested to adopt formal procedures to carry out this objective so that judges, clerks, parties, and counsel would adequately be informed. Judge Adrian Spears, then Chief Judge of the Western District of Texas, was the chairperson and subsequently distributed a proposed model court order.
 
 
 [5]
 By order--of which we can take judicial notice--September 23, 1977, the Western District of Texas adopted the model order. Other than funds in which the United States has the substantial interest (which are to be deposited with the Treasury), paragraph 3 provided:
 
 
 [3]
 Whenever practical and feasible a judge of this Court in his discretion and in the interests of justice and equity may instruct the Clerk to place in some form of interest-bearing accounts all other substantial amounts of registry funds
 After permitting interim initial deposit in the Treasury, paragraph 5 provided:
 However, any such funds meeting the criteria set forth in paragraph 3 may be by order of a judge of this Court required either to be initially invested or if previously deposited in such treasury accounts, required to be withdrawn from such accounts and then reinvested in some form of interest-bearing account or accounts. Such may be done by a judge of this Court, either on the judge's own motion or on the motion of an interested party.
 On January 19, 1979 paragraph 6 of the 1977 order was amended to read as follows, the last two sentences of 6(e) putting the burden directly on the requesting party to see that the Clerk properly complies:
 
 
 [6]
 When a request is made on motion of any interested party that certain registry funds be deposited into some form of interest-bearing account or accounts at a private institution said motion and proposed order shall set out with particularity the following information:
 a. The form of deposit.
 b. The name and address of the private institution where the deposit is to be made.
 c. The name and address of the designated beneficiary or beneficiaries.
 d. The name and address of the custodian of the passbook or certificate of deposit, if other than the beneficiary.
 e. The form of additional collateral to be posted by the private institution in the event that the standard FDIC coverage is insufficient to ensure the total amounts of deposit and as such other information that may be deemed appropriate under the facts and circumstances of the particular case. After the order is entered to invest or reinvest registry funds into some form of interest-bearing account or accounts the party presenting the order shall deliver a copy of said order either personally or by certified mail to the Clerk, or in his absence the Chief Deputy. Further it shall be incumbent upon the presenting party to confirm that the appropriate action has been accomplished by the Clerk in accordance with the provisions of the particular order.
 
 
 [6]
 Rule 67. Deposit in Court
 In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing, whether or not that party claims all or any part of the sum or thing. The party making the deposit shall serve the order permitting deposit on the clerk of the court. Money paid into court under this rule shall be deposited and withdrawn in accordance with the provisions of Title 28, U.S.C., Secs. 2041, and 2042; the Act of June 26, 1934, c. 756, Sec. 23, as amended (48 Stat. 1236, 58 Stat. 845), U.S.C., Title 31, Sec. 725v; or any like statute. The fund shall be deposited in an interest-bearing account or invested in an interest-bearing instrument approved by the court.
 ADVISORY COMMITTEE NOTE
 Rule 67 has been amended in three ways.
 * * *
 The third change is to require that any money be deposited in an interest-bearing account or instrument approved by the court.
 (Changes emphasized.)