In re CONNAUGHT PROPERTIES,
INC., Debtor.

Bankruptcy No. 94–51865.
Document Nos. 105, 106.

United States Bankruptcy Court,
D. Connecticut.

Jan. 25, 1995.

As Amended April 12, 1995.

James Berman, Darcy McGraw, Zeisler & Zeisler, Bridgeport, CT, for debtor.

W. James Cousins, McGowan & Cousins, P.C., Stamford, CT, Christine M. Bazata, Andrew M. Dipietro, Jr., P.C., New Haven, CT, for Hanover Funding Co.

Jerry E. Muntz, Haythe & Curley, New York City, John W. O'Meara, Tyler, Cooper & Alcorn, Stamford, CT, for Beachside Funding Corp.

## RULING ON OBJECTION TO PROOFS OF CLAIM FOR HANOVER FUNDING CO. AND BEACHSIDE FUNDING CORP.

ALAN H.W. SHIFF, Bankruptcy Judge.

The debtor objects to the post-judgment interest rates asserted by secured creditors Hanover Funding Co. ("Hanover") and Beachside Funding Corp. ("Beachside"). Because I conclude that those interest rates are in accord with applicable law as to pre-petition amounts, that objection is overruled.

### BACKGROUND

This case was commenced by voluntary chapter 11 petition on September 23, 1994. Although the debtor's business is described in its schedules as "real estate management and holding company," its only real property asset was a residence (the "Residence") located in Westport, Connecticut. It has no income. The schedules indicated 14 claims secured by the Residence totaling $3,846,468 and unsecured nonpriority claims in the aggregate amount of $766,417.36, of which Jeanne Dana Peters and Pilar Janine Dana, who together own 58 percent of the debtor's stock, hold claims totalling $577,367.

The Residence was sold by order of this court for a purchase price of approximately $4,240,000. Hanover and Beachside each held a judgment lien on the Residence. Those liens transferred to the sale proceeds, *see* § 363(f), and each creditor was paid the face amount of its judgment. The debtor disputes certain post-judgment elements of those secured claims, including interest, attorneys' fees, and costs. By stipulation of

the parties, this ruling addresses only the issue of the correct pre-petition, post-judgment interest rate applicable to each judgment. All remaining issues are reserved for trial.

### I. Hanover Claim

On March 21, 1990, the debtor executed a Corporate Promissory Note (the "Hanover Note") payable to the order of Hanover in the original principal amount of $550,000.[1] The Hanover Note provided for 16% interest, payable monthly, with all outstanding principal and interest due on March 31, 1991. The Hanover Note provided:

In the event of any default or foreclosure proceeding hereunder the rate of interest due under the indebtedness shall be two percent (2%) per month and be computed under this obligation until paid in full. In the event the principal sum shall not be paid on the maturity date as herein provided, it is expressly understood and agreed that this Note shall bear interest at the rate of two (2) per centum per month to be due and payable on the 1st day of each month thereafter until the full principal indebtedness shall be paid to the holder of this Note.

The Hanover Note was secured by a mortgage on the Residence. Paragraphs 2 and 3 of a rider to that mortgage contain identical language regarding the post-default and post-maturity interest rate.

On December 20, 1993, a Judgment of Foreclosure By Sale entered in favor of Hanover in the Connecticut Superior Court for the Judicial District of Stamford/Norwalk (the "Hanover Judgment"). The Hanover Judgment reflected a "debt" of $917,302.36 and an award of attorney fees of $19,772.97. On November 30, 1994, following the sale of the Residence and payment of the face amount of the Hanover Judgment, Hanover filed a secured claim in the amount of $148,-901.62, of which $122,100.01 consisted of post-judgment interest calculated at the rate of two percent per month from December 20,

1993 through November 23, 1994.[2] On December 7, 1994, the debtor filed an objection to Hanover's proof of claim.

### II. Beachside Claim

On March 14, 1989, Banque Paribas brought an action to collect a debt of $636,-683.57 against the debtor and Jeanne–Marie Dana in the United States District Court for the District of Connecticut. In that action, Banque Paribas alleged that Dana had fraudulently conveyed the Residence to the debtor. On March 15, 1989, Banque Paribas obtained a prejudgment attachment against the Residence. On November 21, 1990, summary judgment entered against the defendant Dana only in the amount of $710,943.88. On May 18, 1992, the district court increased the attachment to $1.3 million. On June 11, 1992, the district court entered an order which increased the attachment to $1.7 million, upon a finding that Banque Paribas had "satisfied its burden of showing the validity of its claim and that probable cause exists that judgments will be rendered ... against [Dana and the debtor] in this case [in] an amount which may equal $1.7 million."

On July 9, 1992, Banque Paribas, Dana, and the debtor executed a stipulation (the "Stipulation") which acknowledged that the November 21, 1990 judgment against Dana was the joint and several liability of Dana and the debtor and stated that that judgment would be amended to conform to a form of judgment attached to the Stipulation. On July 10, 1992, the district court "so ordered" the Stipulation and the amended judgment (the "Beachside Judgment") entered. The Beachside Judgment, which was against Dana and the debtor jointly and severally, was in the amount of $800,000 plus $528,000 for attorneys' fees and costs, for a total of $1,328,000. The Beachside Judgment provided:

It is further ORDERED, ADJUDGED and DECREED that this Judgment shall be paid on or before July 31, 1992, that no interest shall accrue on this Judgment until that date, and that plaintiff shall take no steps to enforce this Judgment before July 31, 1992, except that plaintiff may promptly file a judgment lien....

---

1. Claimant Suburban Development Corporation was assigned a 12 percent interest in the Hanover Note.

2. Hanover also filed an unsecured claim in the amount of $56,733.33, which is not at issue here.

It is further ORDERED, ADJUDGED and DECREED that if this Judgment is not satisfied by July 31, 1992 ... interest shall accrue on this Judgment from July 31, 1992, at a rate of 12% per annum, compounded annually....

On August 31, 1992, Banque Paribas assigned the Beachside Judgment to Beachside.[3]

Beachside was paid the face amount of the Beachside Judgment, $1,328,000, upon the sale of the Residence, and on November 30, 1994, filed a proof of claim for the claimed balance in the amount of $594,806.21. Approximately $401,747.71 of that amount represents post-judgment interest through November 29, 1994 at the rate of 12 percent compounded annually. On December 7, 1994, the debtor filed an objection to the claim.

## DISCUSSION

### I. Hanover Claim

 The debtor objects to the interest rate of 2 percent per month on the Hanover Judgment, asserting that applicable Connecticut law limits the post-judgment interest rate to 10 percent per annum.[4]

Conn.Gen.Stat.Ann. § 52–350f (West Supp. 1994) provides in relevant part:

[A] money judgment may be enforced, by execution or by foreclosure of a real property lien, to the amount of the money judgment with ... interest as provided by chapter 663 on the money judgment and on the costs incurred in obtaining the judgment....

Chapter 663 of the Connecticut General Statutes includes several sections, two of which are relevant here. Conn.Gen.Stat. Ann. § 37–1 (West 1987) provides in relevant part:

(a) The compensation for forbearance of property loaned at a fixed valuation, or for money, shall, *in the absence of any agreement to the contrary,* be at the rate of eight per cent a year....

(b) Unless otherwise provided by agreement, interest at the legal rate from the date of maturity of a debt shall accrue as an addition to the debt.

(emphasis added). Conn.Gen.Stat.Ann. § 37–3a (West Supp.1994) provides in relevant part:

[I]nterest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions ..., including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable.

The debtor's reliance on those statutes is misplaced. Section 37–1(a) provides no impediment to Hanover's collection of interest at the rate specified the Hanover Note, because that note is an *agreement to the contrary,* providing for post-maturity interest of two percent per month. Moreover, although § 37–3a arguably could be read to limit not just post-judgment interest but all post-maturity interest to ten percent, its use of the phrase "damages for the detention of money" suggests that it is intended to provide a remedy for a default where the note does not provide for post-maturity interest. Where the note does so provide, there is no need for an award of "damages" because the parties have already provided for interest to compensate the holder for the delay in payment.

Prior to the enactment of the predecessor to § 37–3a, the Connecticut Supreme Court established the rule that the contract rate was to be applied to post-maturity interest even if the parties did not expressly provide for that result. *Adams v. Way,* 33 Conn. 419, 431–32 (1866); *Beckwith v. Trustees of the Hartford, Providence and Fishkill R.R. Co.,* 29 Conn. 268, 270–71 (1860). In 1873, the first predecessor to § 37–3a provided that "in all suits in law or equity ... for the recovery of moneys loaned, no greater rate of interest than seven per cent. per annum shall be recovered or allowed for the time after the money loaned becomes due." In *Hubbard v. Callahan,* 42 Conn. 524 (1875), the Court held that where a note provided for post-maturity interest, that rate was recoverable notwithstanding the statute. The

---

**3.** A separate $67,500 obligation to Beachside is not at issue here.

**4.** The amount of the debt and attorneys' fees included in the Hanover Judgment was $937,-

075.33. It is noted that that sum included $550,- 000 of principal on the Hanover Note and accrued interest through the date of the judgment, and that Hanover claims post-judgment interest

Court further stated that the statute was intended to overrule the result in *Beckwith* and *Adams,* relying in part on an 1875 revision which confined the statute's application to "damages for the detention of money," because "where ... interest after maturity is expressly reserved, it is treated as interest *eo nomine,* and never as damages." *Id.* at 530, 538. In *Globe Inv. Co. v. Barta,* 107 Conn. 276, 140 A. 202 (1928), the Court held that where a note provided for a post-maturity default rate of 12 percent, it was enforceable: "[T]he effect of the decision in *Hubbard v. Callahan* was to confine the operation of the Act of 1873 and its successors, ... at least as applied to notes and similar instruments, to those cases in which the contract makes no provision as to the rate of interest after maturity...." *Id.* at 279, 140 A. 202. The statute construed in *Barta* was worded substantially the same as § 37–3a, except for a change in the applicable interest rate.

Because the interest rate applying after entry of a judgment is limited only by §§ 37–1 and 37–3a, the entry of a judgment on a note in Connecticut does not change the interest rate where the note provides a rate that is applicable post-maturity "until paid." In *Little v. United Nat'l Investors Corp.,* 160 Conn. 534, 280 A.2d 890 (1971), the Connecticut Supreme Court considered the appropriate post-judgment interest rate to be paid where the note provided that "interest shall accrue at the rate of nine (9) per cent per annum on unpaid balances, before and after maturity, by acceleration or otherwise." Construing a predecessor to § 37–3a with substantially the same wording, the Court held: "[t]he statute is applicable to 'damages for the detention of money after it becomes payable' in those cases in which the contract makes no provision as to the rate of interest after maturity *but is not applicable in those in which, as here, a rate of interest, otherwise lawful, is prescribed as applying from*

at the rate of two percent per month on that $550,000 principal debt, not on the entire amount included in the Hanover Judgment.

5. Although *Little* was decided under earlier versions of the relevant statutes, the changes do not appear to have been material. Former Conn. Gen.Stat. § 52–349 provided for "legal interest on the amount of the judgment," and the *Little* court looked to chapter 663 to obtain a definition

*and after the time when the principal becomes payable." Id.* at 540, 280 A.2d 890 (emphasis added). The Court noted that Connecticut's statute controlled over the common law doctrine of merger, which would otherwise dictate that the contract rate would no longer apply upon entry of judgment. *Id.* at 537, 280 A.2d 890. *Little* does not distinguish between post-judgment interest and post-acceleration or post-maturity interest in general.[5] *See also Reynolds v. Ramos,* 188 Conn. 316, 321–22, 449 A.2d 182 (1982) (agreed upon interest rate of 12 percent applied before and after maturity of note); *Personal Fin. Co. v. Lillie,* 129 Conn. 290, 292–93, 27 A.2d 794 (1942) ("The operation of [present § 37–3a] ... as it affects promissory notes and similar instruments, is confined to contracts in which no express provision is made as to a rate of interest after maturity and does not extend to those in which a rate of interest otherwise lawful is prescribed as applying both before and after the time when the principal becomes due."); *In re Tucknall,* 94 B.R. 277, 278 n. 1 (Bankr. D.Conn.1989) ("[T]he court in *Little* ... held that when parties agree on an interest rate, that rate governs.") (dicta).

Recent authority has interpreted *Little* as requiring that contractual provisions relating to the payment of post-maturity interest govern the post-judgment interest rate. In *Bankmart v. Sorrell,* 1994 WL 646264 at *2 (Conn.Super.Ct., Nov. 8, 1994), the court considered the appropriate rate of interest on a deficiency judgment where the note provided: "[I]nterest on the unpaid balance from the date of this Note, until paid, [shall be] at the rate of eighteen percent per annum." The court determined that the 18 percent rate agreed to by the parties controlled over the 10 percent rate prescribed by § 37–3a. *Accord People's Bank v. Pallman,* 1993 WL 53635 at *1 (Conn.Super.Ct., Feb. 11, 1993) ("Connecticut law has interpreted [§§ 37–1

of "legal interest." Present § 52–350f refers to section 663, which includes both § 37–1 and § 37–3a. The wording of § 37–1(a), quoted in *Little* at 160 Conn. 535–36, 280 A.2d 890, has not changed, except for the legal interest rate. *See* 1949 Conn.Rev.Stat. § 6776. As noted, the current version of § 37–3a is substantially unchanged from that construed in *Little. See* 1961 Conn.Pub.Acts ch. 116, § 19; 1971 Conn.Pub. Acts § 574.

and 37–3a] together to read that if the parties agree upon a rate of interest until the balance is paid, then the agreed upon rate becomes the legal rate in the case."); D. Caron, CONNECTICUT FORECLOSURES: AN ATTORNEY'S MANUAL OF PRACTICE AND PROCEDURE, § 8.03B, at p. 137 (2d ed. 1989).[6] I agree with Hanover that the sole authority relied upon by the debtor, *Gionfriddo v. Avis Rent A Car Sys., Inc.*, 192 Conn. 301, 472 A.2d 316 (1984), is readily distinguishable because it involved an action for negligence and related claims and there was no agreement specifying an interest rate.[7]

■ The debtor argues that paragraph 4 of a rider to Hanover's mortgage requires that interest at the default rate would not be due until the Residence was sold. I disagree. Such a reading ignores the defaults expressly provided in paragraphs 2 and 3 and would only allow the application of a default rate if the property were sold. Paragraph 4 merely provides that if the Residence is sold, "the principal sum and accrued interest herein shall become due and payable with the same force and effect as if such date were the maturity date. . . ." That standard due-on-sale clause in no way contravenes the unambiguous provisions of the Hanover Note and mortgage, including paragraphs 2 and 3 of the rider, which provide for an interest rate of two percent per month after default or maturity until payment in full.

I therefore conclude that unless the parties' agreement violates applicable usury limitations, an objection not raised by the debtor, the agreement controls over the rate provided in §§ 52–350f, 37–1(a) and 37–3a.[8] I need not reach Hanover's alternative arguments based on res judicata and judicial estoppel.[9]

## II. Beachside Claim

■ The debtor objects to the interest rate and the annual compounding feature of the Beachside Judgment. 28 U.S.C.A. § 1961(a) (West 1994) provides in relevant part:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

The debtor argues, without citation of relevant authority, that Connecticut's statutory rate for post-judgment interest applies to Beachside's judgment even though it was entered by a federal district court. That argument contravenes both the statute's plain language, which embraces "any money judgment in a civil case," and the overwhelming weight of federal authority, which holds

---

6. *Fed. Deposit Ins. Corp. v. Louis Wade Co.*, 1994 WL 673446 (Conn.Super.Ct., Nov. 23, 1994), applied the statutory rate to a deficiency judgment from the date title to the real property vested in the plaintiff, but relied on *Little* to apply the contract rate from the date of judgment to the date of the passage of title. Because Hanover never obtained title to the Residence, that case supports the proposition that it is entitled to its contract rate on the Hanover Judgment.

7. The debtor's memorandum in support of its objection did not cite the Connecticut Supreme Court's controlling decision in *Little,* even though it cited as contrary authority the lower court decision in *Bankmart v. Sorrell,* which relied on *Little.*

8. *See* Conn.Gen.Stat.Ann. § 37–9(3) (West Supp. 1994) (usury interest limitation does not apply to

"any bona fide mortgage of real property for a sum in excess of five thousand dollars").

9. It is noted, however, that Hanover's res judicata argument has merit. The Hanover Judgment includes post-maturity interest at the rate of two percent per month, and under the authority discussed *supra,* that rate should remain in effect after the judgment. Although the debtor's objection indicates that it filed a notice of appeal to the Hanover Judgment, the debtor does not suggest that that judgment is not final. In any event, my conclusion that Hanover is entitled to the default rate stated in the Hanover Note is not affected by the finality of the Hanover Judgment. The judicial *estoppel* argument, based on alleged June 24, 1994 and August 24, 1994 representations by the debtor in the state court that the full debt would be paid in return for a delay to consummate a private sale, depends upon facts not in evidence.

that § 1961 applies to federal judgments even where the federal court's jurisdiction rests on diversity of citizenship. *See, e.g., Mobil Exploration & Producing N. Am., Inc. v. Graham Royalty Ltd.,* 910 F.2d 504, 509 (8th Cir.1990); *Forest Sales Corp. v. Bedingfield,* 881 F.2d 111, 113 (4th Cir.1989); *Chapman & Cole v. Itel Container Int'l B. V.,* 865 F.2d 676, 689–90 (5th Cir.), *cert. denied,* 493 U.S. 872, 110 S.Ct. 201, 107 L.Ed.2d 155 (1989); *Everaard v. Hartford Accident and Indem. Co.,* 842 F.2d 1186, 1193–94 (10th Cir.1988); *G.M. Brod & Co., Inc. v. U.S. Home Corp.,* 759 F.2d 1526, 1542 (11th Cir.1985). I find that authority persuasive and hold that in the absence of an agreement to a different rate, § 1961 would apply to the Beachside Judgment.[10]

 "The allowance of post-judgment interest under 28 U.S.C. § 1961 is mandatory for any money judgment." *Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 58 (2d Cir. 1984). It is noted that the statute relates to the *allowance* of interest if a money judgment is *recovered* in a district court. Thus the district court does not have discretion to *impose* a rate other than that provided by § 1961. *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.,* 888 F.2d 260, 268–69 (2d Cir.1989). However, that statute does not prohibit parties from stipulating to a different interest rate. Here, the district court was not required to allow post-judgment interest because the parties had stipulated to the entry of a judgment which provided for interest at the rate of 12 percent. Indeed, a contrary result would frustrate settlements.

In *Hymel v. UNC, Inc.,* 994 F.2d 260, 265–66 (5th Cir.1993), a promissory note stated that it would bear interest "from maturity until paid, *both before and after judgment,* at the rate of 9% per annum" (emphasis in original). The court held that " '[w]hile 28 U.S.C. § 1961 provides a standard rate of

post-judgment interest, the parties are free to stipulate a different rate, consistent with state usury and other applicable laws.' " (quoting *ITT Diversified Credit Corp. v. Lift & Equip. Serv., Inc. (In re Lift & Equip. Serv., Inc.),* 816 F.2d 1013, 1018, *modified on reh'g,* 819 F.2d 546 (5th Cir.1987)). In *Kincade v. Gen. Tire and Rubber Co.,* 540 F.Supp. 115 (W.D.Tex.1982), *rev'd on other grounds,* 716 F.2d 319 (5th Cir.1983), the court held:

> Although court-approved settlement agreements may often involve the payment of money, court-approved settlement agreements, though reduced to judgment in some cases, represent not the court's own judgment or that of a jury, but rather the parties' compromise of the lawsuit put in writing. Nor can an amount of money paid according to the terms of a court-approved settlement agreement reasonably be considered to have been "recovered" in a district court, since no adjudication of the suit culminating in recovery occurs in a settlement situation.... [Section] 1961 was not intended to apply and will not be interpreted to extend to court-approved settlement agreements.
>
> This is not to say that interest should not be an element to be taken into consideration by the parties in arriving at a just compromise of a lawsuit.... In addition, a district court, in considering whether a settlement agreement tendered by the parties is fair and reasonable may and should consider the issue of postjudgment interest.

*Id.,* 540 F.Supp. at 121 (footnote omitted).[11] *See also Coston v. Plitt Theatres, Inc.,* 727 F.Supp. 385, 392–93 (N.D.Ill.1989) (§ 1961 did not apply to settlement of discrimination claim); *Travelers Ins. Co. v. St. Jude Hosp.*

---

**10.** Even if Connecticut law applied, the *Little* decision discussed *supra* would require the application of the interest rate contained in the Stipulation rather than the Connecticut statutory rate.

**11.** The Fifth Circuit reversed *Kincade* because it disagreed with the district court's interpretation of the provisions of the settlement agreement

relating to the time at which the settlement funds were to be deposited in the court's registry. Because the Fifth Circuit remanded with instructions to the district judge "to determine what the appropriate, fair interest rate, if any, might have been," 716 F.2d at 323, that court apparently approved the district court's conclusion that § 1961 was inapplicable.

*of Kenner, La., Inc.,* 1992 WL 364999 at *3 (E.D.La.1992).[12]

 I find that the Stipulation is binding on the debtor for two additional reasons. First, "[a] party to a stipulation is not entitled to withdraw from the agreement unilaterally and can only obtain such relief by court action." *Sinicropi v. Milone,* 915 F.2d 66, 69 (2d Cir.1990); *United States v. New England Teamsters and Trucking Indus. Pension Fund,* 737 F.2d 1274, 1278 (2d Cir. 1984). A court may disregard a stipulation regarding a question of law, or a stipulation as to facts that do not exist, or where it would be manifestly unjust to enforce the stipulation. *Sinicropi, supra,* 915 F.2d at 68; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Woodhead,* 917 F.2d 752, 757 (2d Cir.1990). Recently, the Second Circuit affirmed a district court's denial of Rule 60(b) relief where the appellant stipulated to pay an amount of post-judgment interest in excess of the amount for which it believed it was liable. *Andrulonis v. United States,* 26 F.3d 1224, 1235 (2d Cir.1994). The debtor does not allege any ground justifying relief from the Stipulation. The amount of post-judgment interest is often negotiated in the course of settlement discussions and was apparently considered by the district court in approving the Stipulation. *See Kincade, supra,* 540 F.Supp. at 121. Indeed, the fact that the district court had issued a prejudgment attachment for $1.7 million which was well in excess of the amount of the Beachside Judgment and the provisions of the Beachside Judgment, which provided a grace period for payment in full before interest would begin to accrue, suggest that the interest component was negotiated by the parties.[13] Thus, even assuming *arguendo* that § 1961(a) should have been applied by the district court, there is no reason why the debtor could not stipulate to pay additional interest above that rate as an incentive to obtain

settlement, in which event such a stipulation would be enforceable.

 Second, res judicata bars the debtor from attacking the district court's final judgment. "Res judicata will preclude relitigation of a claim where the earlier decision was a final judgment on the merits rendered by a court of competent jurisdiction, in a case involving the same parties or their privies, where the same cause of action is asserted in the later litigation." *Amalgamated Sugar Co. v. NL Indus., Inc.,* 825 F.2d 634, 639 (2d Cir.), *cert. denied,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). That doctrine "prevents the litigation of any claim or ground of recovery that was available to a party in a prior action, whether or not the prior judgment actually determined that claim or ground." *Prime Management Co., Inc. v. Steinegger,* 904 F.2d 811, 815 (2d Cir.1990). Consent judgments such as those involved here are entitled to res judicata effect. *Samuels v. N. Telecom, Inc.,* 942 F.2d 834, 836 (2d Cir.1991) (a stipulation dismissing an action with prejudice has res judicata effect); *Amalgamated Sugar Co. v. NL Indus., Inc., supra,* 825 F.2d at 639. The debtor's argument makes the anomalous argument in this court that the interest rate it agreed to in the district court is contrary to law. Moreover, such an argument conflicts with the doctrines of equitable and judicial estoppel. *See In re Peck,* 155 B.R. 301, 305–06 (Bankr.D.Conn.1993).

I further conclude that the 12 percent interest rate applies to all components of the Beachside Judgment, including prejudgment interest. *Air Separation, Inc. v. Underwriters at Lloyd's of London,* 45 F.3d 288, 290–91 (9th Cir.1995); *Drovers Bank of Chicago v. Nat'l Bank and Trust Co. of Chariton,* 829 F.2d 20, 23 (8th Cir.1987); *see United States v. Hannon,* 728 F.2d 142, 145 (2d Cir.1984) (a federal court judgment may provide for in-

---

12. *Waggoner v. R. McGray, Inc.,* 743 F.2d 643 (9th Cir.1984) (per curiam), is not to the contrary. There, the court held that a stipulated judgment bore interest at the rate specified in § 1961(a) where the stipulation was silent as to post-judgment interest.

13. It is noted that § 1961(a) requires that interest be calculated from the date of the entry of the

judgment. *See Kaiser Alum. & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990). The fact that the parties stipulated to delay the accrual of interest supports the conclusion that they did not contemplate that § 1961(a) would be applicable to the Beachside Judgment.

terest at the statutory rate on accrued interest); *cf. In re Tucknall, supra,* 94 B.R. at 278 n. 1 ("That pre-judgment interest is a component of that judgment does not lead to the conclusion that interest is compounded.") (Connecticut law). To the extent the debtor objects to the annual compounding feature of the Beachside Judgment, that argument fails because, as noted, the debtor agreed to that result, and that agreement is not contrary to applicable law. I note, for example, that Connecticut law expressly permits the charging of interest on accrued interest for commercial loans in excess of $10,000, such as the one upon which the Beachside Judgment appears to be based. Conn.Gen.Stat.Ann. § 37–1a (West 1987).[14] It is also noted that had there been no Stipulation so that § 1961(a) would be applicable, § 1961(b) requires the annual compounding of interest on federal judgments. Finally, apart from the conclusion that the debtor is bound by its Stipulation, I further conclude that it is prohibited from asserting that the agreement upon which judgment entered is unenforceable because of the doctrines of res judicata and judicial estoppel discussed *supra.*

### III. Post–Petition Interest

■ The claims of Hanover and Beachside include post-petition interest. The issue evolves as to whether § 506(b) affects the post-petition component of the interest rates I have found to be appropriate. Generally, post-petition interest is allowed to over-secured creditors, such as Hanover and Beachside, at the contract rate, although some courts have reduced escalated post-default interest rates that would impose an undue burden on the holders of allowed unsecured claims. *See Matter of Terry Ltd. Partnership,* 27 F.3d 241, 243 (7th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 360, 130 L.Ed.2d 313 (1994); *Bradford v. Crozier (Matter of Laymon),* 958 F.2d 72, 75 (5th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 328, 121 L.Ed.2d 247 (1992); *Foss v. Boardwalk Partners (In re Boardwalk Partners),* 171 B.R. 87, 92 (Bankr.D.Ariz.1994); *In re Consol. Properties Ltd. Partnership,* 152 B.R. 452, 456–57 (Bankr.D.Md.1993). It is noted that Beachside's interest rate is not based on a post-default contract provision and that a substantial percentage of the unsecured claims are held by the debtor's insiders. However, it is not clear from the question reserved for this decision whether the issue of the post-petition interest rate has been waived, and I do not address it here.

### ORDER

For the foregoing reasons, the debtor's objections to the pre-petition, post-judgment

---

**14.** Apart from the observation that Conn.Gen. Stat. § 37–1a has modified common law, it is noted that prior to the enactment of that statute and its predecessors, the common law occasionally precluded the recovery of interest on interest that had not yet accrued. *See Camp v. Bates,* 11 Conn. 487 (1836); *cf. Cherokee Nation v. United States,* 270 U.S. 476, 490, 46 S.Ct. 428, 70 L.Ed. 694 (1926) ("The general rule ... is that, *in the absence of a contract therefor* or some statute, compound interest is not allowed to be computed upon a debt.") (emphasis added); *Loomis and Loomis, Inc. v. Stecker and Colavecchio Architects, Inc.,* 6 Conn.App. 88, 94, 503 A.2d 181, 184 (1986) (interest is simple interest in the absence of a contrary agreement). Courts recognized the debtor's "moral duty" to pay compound interest if he promised to do so, but sometimes refused to permit its collection to provide "improvident and necessitous borrowers ... with a shield to protect them against the supposed ruinous consequences of their own contracts," and because the compounding of interest could result in an "overwhelming accumulation" of interest and "inflame the avarice and harden the heart of the creditor." *Camp v. Bates, supra,* 11 Conn. at 496–97. But even under the common law, courts permitted the collection of interest on interest already accrued and interest on future interest where the equities required, where, e.g., it was consistent with the parties' course of dealing. *Id.* at 500–01. For example, Connecticut courts have permitted the collection of interest on interest in the case of a coupon bond which, as a negotiable instrument, is analogous to a promissory note. *Fox v. Hartford & W. Hartford Horse R.R. Co.,* 70 Conn. 1, 11–12, 38 A. 871 (1897).

Even if Conn.Gen.Stat. § 37–1a is inapplicable, the equities favor permitting Beachside to collect compound interest. The agreement to pay it was not in connection with the original loan, but rather with the settlement of a subsequent collection action in which the debtor was represented by counsel. Further, the underlying loan appears to have been commercial in nature. I also note that compounding only adds about one percent per annum to Beachside's effective interest rate. I note further that Connecticut's usury statute does not apply to commercial loans over $10,000. *See* Conn.Gen.Stat.Ann. § 37–9(4) (West Supp.1994).

interest components of the Hanover and Beachside claims are OVERRULED, and IT IS SO ORDERED.