913 F.Supp. 256 (1996)
In re IVAN F. BOESKY SECURITIES LITIGATION.
Richard C. GOODWIN, et al., Plaintiffs,
v.
Ivan F. BOESKY, et al., Defendants.
This Document Relates to the Pacific Lumber Class and Shareholder Trading Actions Only
MDL Dkt. No. 732. Nos. 89 Civ. 0510 (MP), 89 Civ. 3782 (MP), 89 Civ. 3783 (MP), 89 Civ. 3786 (MP), 89 Civ. 5567 (MP) and 89 Civ. 7722 (MP).
United States District Court, S.D. New York.
January 29, 1996.

*257 DISALLOWANCE OF INTEREST ON FEE AWARDS

MILTON POLLACK, Senior District Judge.

MEMORANDUM

I.
On the eve of trial of the so-called Pacific Lumber Class and Shareholder Trading actions, six in number, brought by former shareholders of Pacific and consolidated in the above-captioned multi-district litigation, a Settlement was reached on May 17, 1994, providing for a settlement fund of up to $52 million less reserves for taxes and administration. Those six actions were consolidated in the above-captioned multi-district litigation (MDL 732) and certified by the Court to proceed on behalf of plaintiff class (Class VI).
In addition to that settlement, two prior settlements with other settling defendants referred to as the "Drexel Settlement" with the Drexel defendants and the "Milken Settlement" with Michael Milken and certain of his associates, yielded recoveries on behalf of the former stockholders of Pacific Lumber. In addition, the Pacific Lumber stockholders received distributions from disgorgement funds established by the SEC in settlements with Drexel and Michael Milken. The total distribution from these settlements and the disgorgement funds came to about $92 million before taxes and administration costs.
The plaintiffs' attorneys in the Class VI actions applied to the Court for an award of attorneys' fees and expenses in the Class VI suits, and also applied to the Court for attorneys' fees on the additional recoveries of the Pacific Lumber stockholders from allocations that the Court had approved from the Drexel and Milken Settlements and the two disgorgement Funds, respectively, the Subclass B Fund and the Schedule 8 Fund. The interest of Pacific Lumber in these Funds was to be evaluated by an Executive Committee for Subclass B and by a Steering Committee for Schedule 8.
The Executive Committee for Subclass B determined the amount to be allocated to each claimant from the Subclass B Fund, including the Pacific Lumber stockholders. A designated representative was assigned to represent the Pacific Lumber stockholder claimants in proceedings before the Executive Committee. Lowell Sachnoff, Esq. of the Chicago law firm of Sachnoff & Weaver was appointed by the Court to serve as designated representative for the Pacific Lumber stockholder claim. A disinterested member of the Executive Committee was assigned to review that claim, negotiate with the designated representative for the claimants, and to recommend a value for the claim to the Executive Committee.
The valuation of the Pacific Lumber stockholder claim in Drexel Subclass B Fund was presumed to apply equally to the Milken Schedule 8 Fund allocations because of the similarity of the underlying charges in the claims. The Schedule 8 Steering Committee, with the concurrence of the SEC representative thereon, concluded that there was no basis for revisiting the Drexel Subclass B valuation for the Pacific Lumber claim.
*258 After the allocation proceedings, the Pacific Lumber stockholder claims against the Subclass B Fund and the Drexel Civil Disgorgement Fund yielded a recovery estimated at about $46 million before taxes and administration costs; the recovery to the Pacific Lumber stockholders from the Schedule 8 Settlement Fund and the Milken Civil Disgorgement Fund was similarly estimated at $46 million before taxes and administration costs. No private counsel played any significant role in the disgorgements which the SEC obtained from Drexel and Milken; those funds having been created solely through the efforts of the SEC. Accordingly, no compensation was to be paid on account of the creation of those funds. However, it was ruled that compensation was due for counsels' services in obtaining from both the settlement and disgorgement funds the distributions for the Pacific Lumber stockholders in the Subclass B allocation proceedings and the Schedule 8 allocation proceedings.
At a hearing held on March 16, 1995, the Court found the Joint Declaration of counsel for the award of attorneys' fees and reimbursement of expenses, which had been filed on March 1, 1995, was unacceptable for the award of fees or the reimbursement of expenses and a refiling was required.
After a refiling and on realistic appraisal and required modification of the claimed lodestars submitted by counsel, and upon consideration of an appropriate premium enhancement thereof, the Court, in its discretion, made the following intended allowances to counsel for the moving parties herein:

 Gold & Bennett
 for shareholder actions: $4,000,000
 for Drexel/Milken allocations: $1,650,000
 __________
 Total allowance: $5,650,000
 Sachnoff Group
 for shareholder actions: $6,000,000
 for Drexel/Milken allocations: $2,500,000
 __________
 Total allowance: $8,500,000

The Court expressly provided that said plaintiffs counsel would not be entitled to the payments of these sums on which they now seek interest, unless and until various conditions precedent were complied with to the Court's satisfaction. The award of the intended attorneys' contingent fees was neither earned nor realistically payable until the conditions were complied with including the actuality of payment to the shareholders of their recoveries from the Settlement Fund.

II.
Moving counsel initially laid claim to fees payable by the Class in the notice, dated October 4, 1994, distributed to the Class convening the Fairness Hearing to be held on the Settlement offer. Approval was sought by Lead/Liaison counsel in the Ivan F. Boesky Securities Litigation Class and by the separate counsel for the Pacific Shareholder Class and other counsel for the Pacific Shareholder Trading plaintiffs. The notice stated with respect to "Attorneys' Fees and Expenses":
The Plaintiffs' attorneys in the Class VI Actions will apply to the Court for an award of attorneys' fees not to exceed 25% of the recovery pursuant to the Settlement and for reimbursement of their out-of-pocket expenses, including witness fees. The Plaintiffs' attorneys will also apply to the Court for awards of attorneys' fees upon the respective recoveries on behalf of Class VI and settlement Subclass 2 pursuant to the Boesky, Milken and Drexel Settlements.
Nowhere was mention made in the notice to the Class of a claim for interest of any sort for any reason, on any award out of the Class Fund, or of expectancy of a payment of the fees in advance of the date of a recovery by the Class stockholders of the amount distributable and actually distributed to each from the Fund effecting a recovery to them.
The Settlement was approved in due course and the Settlement Fund Administrator undertook to assemble the claims of stockholders and others against the Fund; taxes were determined, expenses were determined, including the intended fees to counsel which had been passed upon, and costs of administration were ascertained and all of these were included in the calculus for the necessary proration to be made to determine recovery for each shareholder in the Class, and finally, an audit was made of the available Fund. All of these took time.
*259 The distributable proration payable to each stockholder according to stock ownership was determined by the Fund Administrator on September 29, 1995; its Amended Final Report was dated November 7, 1995, and was submitted with Lead/Liaison's Supplement to the Application for its approval on November 12, 1995.
The recovery by each stockholder was ascertained and the massive distributions to the stockholders of the Class of their prospective recoveries were prepared as soon as the necessary administrative steps could take place.
As a pure afterthought, the moving parties on December 6, 1995 asserted a theretofor unannounced claim against the Settlement Fund for interest from June to November on the amounts of fees prepaid to them from the Fund. They claimed $145,043.17 by reason of alleged delay in payment from the date on which the Court had determined their "intended" fees to the dates when checks issued to them from the Fund (all before any distribution to the Class). This assertion was made before the distributable base could be established or the prorated per share dividend could be administratively determined.
The Court did not delay the payment of counsels' intended fees until the actual recoveries had been delivered to the stockholders; the latter became payable and were paid in December, 1995. Since the figures seemed to be substantially available at an earlier time and only final details needed to be resolved by the Fund Administrator to be able to pay off everyone at one time, payments totaling $14,100,000 had been made to the moving parties as the conditions operative to their availability matured. Thus, on June 16, 1995, the Court directed that the moving parties would receive payment of $10 million and they received their checks therefor dated June 21, 1995, and the payment of a balance of $4,150,000 was made as conditions for the payment thereof matured and the checks therefor were dated November 29, 1995.
These anticipatory payments could well have been delayed for the short time until the shareholders' prorata checks were issued for the recovery on which the lawyers' fees were grounded.
Nonetheless, on discovery of the existence of 28 U.S.C. § 1961, the moving parties saw an opportunity, they believe, to augment their fees by the present reach for an addition of interest accruing from the date when the fees were calculated by the Court until the date when the checks and payment thereof were actually made and issued.
Suffice to say, the Court established the acceptable Lodestar value and fixed a premium thereon in the belief that at the time of the recovery by each stockholder of his share of the Settlement Fund, their lawyers would be entitled to their pay for delivering their shares to the Class members. The lawyers did not have a contract to be paid their fees regardless of whether the Class members actually received their damages; theirs was a contingent fee to be paid out of the client's recovery; that occurred with the actual distribution to the Class in December. Until that distribution, there was no actual recovery. Until the deposited Fund was made available to the Class, the lawyers had no matured equitable or legal claim to a cash payment to them of fees.

III.
The moving parties assert, in the first instance, that 28 U.S.C. § 1961 entitles them to interest because the orders establishing the intended amounts payable to them out of the Fund, constitute money judgments in a civil case, recovered in a district court. This assertion is ill-conceived.
Rule 58 of the Federal Rules of Civil Procedure requires the Clerk of the Court to prepare and enter a money judgment which shall set forth certain matters. The Rule makes clear that
Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a).
There was no such judgment for fees in this case. Certainly, no Clerk of Court did or could legally issue an execution to enforce the substance of the orders valuing the services, or even paying them in advance of the *260 time a distributed recovery to the stockholders in the Class.
This statute was not intended in any way to create a "judgment" for money or a "recovery." The statute just does not apply to fee determinations payable out of a Settlement Fund until it becomes in fact, a distribution to the shareholders of the Class.
The second string to the bow of the claim of the moving parties, is the argument that it is equitable to grant interest on the allocations from the Fund from the date the Court determines the amount to be distributed to lawyers.
The order refers to "intended" allocations. Plainly, this could only mean that the lawyers were not, as a matter of right to be preferred in payment to the date of actual availability of the Fund to stockholders. The Court did not intend to create an obligation to the lawyers regardless of whether the Class did or did not actually receive distributions from the Fund.
Addressed to the equitable conscience of the Court, the Court denies the claim made for interest at the expense of the Class, particularly so since the prime responsibility for the largest part of the Fund was due not to the moving parties, but to the Lead/Liaison counsel who settled the Pacific Lumber suit and handled the Drexel, Milken and SEC distributions in major part.
Court-approved settlements are not covered by the interest statute cited by the moving parties. Attorneys' fees out of a Class Settlement, as in this case, do not create the type of "judgment" referred to by the statute.
Although courts have occasionally indicated in special circumstances that 28 U.S.C. § 1961(a) applies in court-approved settlement situations, there is at least some precedent that money payable out of the Fund, pursuant to the terms of a court-approved settlement is not subject to the statute before the actual recovery by the Class, i.e., distribution to the Class. See In re Connaught Properties, 176 B.R. 678, 685 (D.Conn., 1995) (noting that the Fifth Circuit views § 1961 as inapplicable in settlement situations). Since, in this case, there has been no money judgment "recovered" as required under § 1961, the statute's interest provisions are irrelevant in the present circumstances. The orders in this case were not final because they included several conditions precedent to payment.
The equities in this case weigh against the movants. The In re "Agent Orange" Product Liability Litigation case, 611 F.Supp. 1296 (E.D.N.Y., 1985), indicates that district courts have at least some leeway in determining what is fair with respect to interest on attorneys' fees, particularly if 28 U.S.C. § 1961(a) is not always applied to court-approved settlement situations. In the present case, plaintiffs' attorneys are suggesting both that they were entitled to receive fee payments before the Class was paid, and that they essentially should receive bonus payments that the premium placed by the Court on the lodestar has already provided. Interest payments do not implicate fairness concerns when short delays in payment are due, as in this case, to administrative necessities and problems in administrating the claims.
The claim for interest is in all respects denied because it is not warranted by the law under which it was asserted, or by equitable circumstances and considerations.
SO ORDERED.